[Cite as *In re S.H.*, 2014-Ohio-2770.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 100529

---

## IN RE:   S.H.

A Minor Child

---

## JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL 12112220

BEFORE:   Boyle, A.J., Blackmon, J., and   Stewart, J.

RELEASED AND JOURNALIZED:   June 26, 2014

**ATTORNEY FOR APPELLANT**

Timothy R. Sterkel
1414 South Green Road
Suite 310
South Euclid, Ohio   44121


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Stephanie N. Hall
Assistant County Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, A.J.:

{¶1}   Appellant, S.H., appeals from the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division, finding him to be delinquent on one count of rape, in violation of R.C. 2907.02(A)(2).   He raises the following two assignments of error:

> I.   The juvenile court erred in denying appellant's Juvenile Rule 29 motion for acquittal.
>
> II.   The juvenile court's adjudication of appellant delinquent child was against the manifest weight of the evidence.

{¶2}   Finding no merit to the appeal, we affirm.

Procedural History and Facts

{¶3}   In July 2012, a complaint was filed against S.H., age 17, alleging that, on March 16, 2012, he "engage[d] in sexual conduct, to wit: vaginal penetration, with J.G. [age 17] by purposely compelling her to submit by force or threat of force."   The complaint further carried another count of rape for oral penetration, one count of kidnapping, and two counts of gross sexual imposition.   S.H. denied the charges, and the matter proceeded to a bench trial where the following evidence was presented.

{¶4}   S.H. and J.G. first met at the end of February 2012 when J.G. was getting off a bus near S.H.'s neighborhood.   J.G. gave S.H. her phone number but referred to herself only by her middle name.   Approximately a few weeks later, the two ran into each other again after J.G. got off the bus from school and while she was walking down East 126th Street toward her aunt's house.   As to the events that transpired after their encounter, S.H. and J.G. provided different accounts of the events.

*J.G.'s Testimony*

**{¶5}** According to J.G., they stopped in front of an abandoned red and yellow house, at which time S.H. "grabbed" her butt. J.G. testified that S.H. "guided" her to the back of the house, leading her into the abandoned garage. Once inside the garage, S.H. kissed J.G., which she allowed. The kissing escalated to S.H. "feeling" her breasts with his "hands up [her] shirt." J.G. responded, "I don't know you. I'm not this type of girl. I don't want to do this here." According to J.G., S.H. replied by saying, "chill," and then began to place his hands in her pants, asking if he could perform oral sex. J.G. told him "no," but S.H. proceeded to pull her pants down and "began to perform oral sex" while she was standing up against the garage wall. After a minute, S.H. stopped and J.G. pulled her pants up. Although J.G. did not remember "exactly" what happened next, she described S.H.'s subsequent actions as follows:

> Like he was trying to get me to the ground, so he could have sex with me. * * * Pushed me. * * * I just remember laying on the ground and I was trying to keep my legs closed because he was trying to separate them. And put my pants down. * * * I was saying stop. I was trying to push him. * * * He was like kind of straddling me.

**{¶6}** J.G. further testified that S.H. ultimately put his penis in her vagina, "tried to have sex with me and then he took his penis out and put a condom on and then put it back in." During this time, J.G. was crying, and S.H. did not say anything. J.G. testified that the incident lasted five to ten minutes and then S.H. pulled his pants back on, wiped her off, and then left.

**{¶7}** J.G. immediately walked to her aunt's house but left for her best friend's house when she discovered that her aunt was not home. J.G. told her friend what happened, who encouraged her to call her mother. J.G.'s mother contacted the police and ultimately took J.G. to the hospital to be examined.

### *S.H.'s Testimony*

**{¶8}** S.H. testified that he was walking up Corlett Avenue when he saw J.G. get off the bus. According to S.H., he and J.G. walked together to the park behind Charles Dickens school on East 129th and Corlett, where they continued to talk and then started kissing. S.H. testified that J.G. let him suck her breasts and "finger her vagina" after he asked her to do so. She indicated that "she don't care." S.H. denied ever forcing himself on J.G. or even requesting or having sex with J.G.

**{¶9}** On cross-examination, S.H. acknowledged that he denied any knowledge of the reported incident upon being interviewed by the police. He further admitted telling Det. Lessman about his sex life, indicating that he previously had sex in garages with girls but just not the garage at issue or with J.G.

### *State's Other Evidence*

**{¶10}** Aside from J.G., the state presented two other witnesses at trial: Lisa Arnold, a sexual assault nurse examiner, and Cleveland police detective, Karl Lessman.

**{¶11}** Arnold testified that she examined J.G. and discovered three lacerations around her hymen and some shearing on J.G.'s labia minora. According to Arnold, J.G.'s injuries were consistent with the history that J.G. provided as to the sexual assault.

Arnold explained that the injuries are common with a "mounting injury" and "indicative of force and trauma."

{¶12} Det. Lessman testified that he interviewed S.H. and that S.H. denied any involvement in the incident, claiming no recollection of being anywhere near the house at issue on the day of the incident. Det. Lessman further testified that S.H. denied any knowledge of the victim. On cross-examination, Det. Lessman indicated that he never showed S.H. a picture of the victim and that the victim had never told S.H. her real name. The state played a video recording of Det. Lessman's interview of S.H. During the interview that was conducted on April 25, 2012, approximately six weeks after the incident, Det. Lessman gave a summary of the victim's accusations, to which S.H. indicated that none of it sounded familiar.

{¶13} The state further presented a joint stipulation indicating that S.H.'s DNA was found on the left breast of J.G. but no DNA was found on J.G.'s underwear, vaginal, or anal samples.

*Adjudication and Sentence*

{¶14} The trial judge found S.H. delinquent of a single count of rape pertaining to vaginal penetration but acquitted him of the remaining charges. The trial judge subsequently held a dispositional hearing, found S.H. to be a juvenile sexual offender, classified him as a Tier I offender, and placed him on six months of community control sanctions.

{¶15} S.H. appeals his delinquency adjudication.

## Sufficiency of the Evidence

**{¶16}** In his first assignment of error, S.H. argues that the state failed to present sufficient evidence to support the rape conviction and that the trial court should have granted his Juv.R. 29 motion for acquittal. We disagree.

**{¶17}** When an appellate court reviews a record upon a sufficiency challenge, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶18}** S.H. was adjudicated delinquent of committing rape, a violation of R.C. 2907.02(A)(2), which provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

**{¶19}** S.H. argues that the state failed to prove these elements beyond a reasonable doubt because the victim was unable to recall the events. According to S.H., the victim repeatedly testified that "she did not know what happened." S.H. further contends that "there were no physical injuries noted by the SANE nurse that would be consistent with the use of force," thereby negating the accusation of forcible rape. S.H.'s argument, however, misconstrues the evidence presented at trial.

**{¶20}** Although J.G. initially stated that she did not remember exactly what happened, the record reveals that J.G. eventually recalled and testified in detail as to S.H.'s actions in the garage. To the extent that J.G. had some difficulty recalling the exact events at first during the state's direct examination, this is a factor that goes to her credibility. This factor alone, however, does not negate the entirety of J.G.'s testimony, including her testimony that S.H. placed his penis inside of her after pushing her to the ground and forcibly separating her legs.

**{¶21}** We further note that, although Arnold testified on re-cross examination that the injuries could possibly happen during consensual sexual conduct, she indicated that it is highly unlikely. Indeed, Arnold testified that J.G.'s injuries, namely, the three vaginal lacerations and some shearing on the labia, were consistent with the victim's account of what happened. Her testimony therefore does not contradict the account given by J.G.

**{¶22}** Construing this evidence in a light most favorably to the state, we find that the state presented sufficient evidence to support a delinquency finding of rape, and therefore the trial court properly denied S.H.'s Juv.R. 29 motion.

**{¶23}** The first assignment of error is overruled.

Manifest Weight of the Evidence

**{¶24}** In his second assignment of error, S.H. argues that his conviction is against the manifest weight of the evidence. We disagree.

**{¶25}** In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is "whether there is substantial evidence upon which a jury could

reasonably conclude that all the elements have been proved beyond a reasonable doubt." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81. This review entails the following:

> we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"

*Id.*, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶26} S.H. argues that the trial court lost its way in convicting him. The gravamen of his argument is that his testimony was more credible than the victim's testimony, especially given that the victim initially could not recall exactly what happened. He further argues that Arnold's testimony corroborated his testimony more than the victim's testimony. We find these arguments lack merit.

{¶27} Here, the trier of fact obviously found the victim's testimony more credible than S.H.'s, which we cannot say constitutes a manifest injustice in this case. Under a well-settled precedent, we adhere to the principle that the credibility of witnesses and the weight to be given to their testimony are matters for the trier of fact to resolve. *See State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). Although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the factfinder's determination of the witnesses' credibility. *State v. Chandler*, 10th Dist. Franklin No. 05AP-415, 2006-Ohio-2070, ¶ 9. Further, the trier of fact is free to believe or disbelieve all or any

of a witness's testimony. *State v. Montgomery*, 8th Dist. Cuyahoga No. 95700, 2011-Ohio-3259, ¶ 10.

{¶28} Notably, S.H.'s own credibility was severely undermined by his failure to account for his actions with the victim when interviewed by Det. Lessman. Although S.H. did not know the victim by her first name, S.H. still denied any involvement with any female, indicating that none of the allegations of the victim sounded familiar. S.H.'s story apparently changed after learning that the state had recovered his DNA on the victim. We cannot say that the trial judge lost its way by believing the victim over S.H.

{¶29} Additionally, we do not agree with S.H. that Arnold's testimony corroborated his version of the events more so than the victim's. To the contrary, Arnold repeatedly stated that the injuries she noted during the victim's examination were consistent with the victim's reported sexual assault.

{¶30} Based on the record before us, we cannot say that the trial court's decision is against the manifest weight of the evidence.

{¶31} The second assignment of error is overruled.

{¶32} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. The finding of delinquency having been affirmed, any bail or stay of execution pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, ADMINISTRATIVE JUDGE

PATRICIA A. BLACKMON, J., and
MELODY J. STEWART, J., CONCUR