[Cite as *Lyndhurst v. Smith*, 2015-Ohio-303.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 101134

**CITY OF LYNDHURST**

PLAINTIFF-APPELLEE

vs.

**GREGORY M. SMITH**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Lyndhurst Municipal Court
Case Nos. 12 CRB 00680, 13 CRB 00483,
13 CRB 00484, and 13 CRB 00639

**BEFORE:** Boyle, J., Keough, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** January 29, 2015

**ATTORNEY FOR APPELLANT**

R. Brian Moriarty
2000 Standard Building
1370 Ontario Street
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Michael E. Cicero
Prosecuting Attorney, City of Lyndhurst
Vincent A. Feudo
Nicola Gudbranson & Cooper
25 West Prospect Avenue
Republic Building, Suite 1400
Cleveland, Ohio   44115

MARY J. BOYLE, J.:

**{¶1}** Defendant-appellant, Gregory Smith, appeals from several judgments convicting him of one charge of disorderly conduct and three charges of violating a civil protection order. He raises two assignments of error for our review:

1. The guilty verdicts concerning the violation of the protection order were inconsistent and not based upon sufficient evidence.

2. The guilty verdicts are against the manifest weight of the evidence.

**{¶2}** Finding no merit to his appeal, we affirm.

<u>Procedural History and Factual Background</u>

**{¶3}** Plaintiff-appellee, the city of Lyndhurst, charged Smith with six offenses in five cases as follows.

**{¶4}** In Lyndhurst M.C. No. 12 CRB 00680, Smith was charged with violating a protection order in violation of R.C. 2919.27, and disorderly conduct in violation of Lyndhurst Codified Ordinance ("LCO") 648.04(a)(2). The date of each alleged offense was September 17, 2012.

**{¶5}** In Lyndhurst M.C. No. 13 CRB 00482, Smith was charged with violating a protection order in violation of R.C. 2919.27. The date of the alleged offense was April 16, 2013.

**{¶6}** In Lyndhurst M.C. No. 13 CRB 00483, Smith was charged with violating a protection order in violation of R.C. 2919.27. The date of the alleged offense was April 17, 2013.

**{¶7}** In Lyndhurst M.C. No. 13 CRB 00484, Smith was charged with violating a

protection order in violation of R.C. 2919.27. The date of the alleged offense was April 18, 2013.

{¶8} In Lyndhurst M.C. No. 13 CRB 00639, Smith was charged with violating a protection order in violation of R.C. 2919.27. The date of the alleged offense was August 15, 2013.

{¶9} Smith pleaded not guilty to all charges, and the five cases proceeded to a consolidated jury trial. The following facts were presented to the jury. Because the case involved multiple events on multiple days, we will label each event to avoid confusion.

The Civil Stalking Protection Order

{¶10} The parties stipulated to a civil stalking protection order ("CSPO" or "protection order") being admitted into evidence. On August 9, 2011, Latoyia Delaine obtained a CSPO against Smith, effective until August 9, 2016. Latoyia's husband, Terence Delaine, and their two minor children, M.D. and A.D., were named as "persons protected" by the order. The Delaines live directly next door to Smith.

{¶11} The CSPO, which was entered into evidence, contained the following relevant orders:

> 1. **RESPONDENT SHALL NOT ABUSE** the protected persons named in this Order by harming, attempting to harm, threatening, following, stalking, harassing, forcing sexual relations upon them, or by committing sexually oriented offenses against them.

> 2. **RESPONDENT SHALL NOT ENTER** the residence, school, business, place of employment, day care centers, or child care providers of the protected persons named in this Order, including the buildings, grounds, and parking lots of those locations. Respondent may not violate this Order **even with the permission of a protected person**.

> * * *

5. **RESPONDENT SHALL STAY AWAY** from protected persons named in this Order, and shall not be present within 500 feet * * * of any protected persons, wherever those protected persons may be found, or any place the Respondent knows or should know the protected persons are likely to be, **even with protected person's permission.** If Respondent accidentally comes in contact with protected persons in any public or private place, Respondent must depart *immediately*. This Order includes encounters on public and private roads, highways, and thoroughfares.

* * *

7. **RESPONDENT SHALL NOT INITIATE OR HAVE ANY CONTACT** with the protected persons named in this Order at their residences, businesses, places of employment, schools, day care centers, or child care providers. Contact includes, but is not limited to, telephone, fax, e-mail, voice mail, delivery service, writings, or communications by any other means in person or through another person. Respondent may not violate this Order **even with the permission of a protected person.**

(Emphasis sic.)

<u>The September 2012 Driveway Incident</u>

**{¶12}** Terence Delaine testified that on September 12, 2012, he got home around 9:00 p.m. He backed into his garage and was getting some items out of his Dodge Charger, when he heard Smith call him a "cocksucker." Terence recognized Smith's voice. Terence stated that his garage door was closing as Smith called him a "cocksucker." Terence got out of his vehicle and opened his garage door. At that point, Smith started "rattling off" and "cussing [him] out." Terence said that Smith "told me to come over there and fucking cocksucker, you wife beater. You think you're tough, and just rattling stuff off." Terence said that he recorded what Smith was saying to him. When Smith stopped, Terence called the police and later made a statement and gave the police a copy of the recording. The recording was played in court.

**{¶13}** On cross-examination, Terence denied playing music as he backed into his garage. He said that he was talking to his wife on his cell phone. Terence said that he began recording

Smith less than a minute after he went back outside to "see what was going on."

The April 2013 School Incidents

{¶14} Latoyia testified that she learned in April 2013 that Smith came in contact with her oldest daughter, M.D., at her school. The parties stipulated to three videos that were obtained from M.D.'s school, from April 16, 17, and 18. Latoyia watched the first video, recorded on April 16, 2013, and identified M.D., who was in the first grade at the time, walking down a hallway. Walking in the same hallway, near M.D., was Smith and his son. Latoyia explained that she called the police after she learned that Smith had been to her daughter's school. She stated that when M.D. saw Smith in the hallway, M.D. "swoops out of the way, goes up to the side by her friends." Latoyia further stated that in the video, Smith looked "towards [M.D.] and her friends." In the video, Smith first walked by M.D. with his son, and then he walked back past her, without his son.

{¶15} On cross-examination, Latoyia testified that she gave the CSPO to the principal of M.D.'s school about three weeks to one month before the April 16 incident.

{¶16} Erica Taylor, principal of M.D.'s school, testified that the Delaines gave her a copy of the CSPO in December 2012 or January 2013. She watched the three videos from April 16, 17, and 18, 2013. Taylor identified M.D. and Smith in the hallway on the morning of April 16, 2013. Taylor also identified a video taken from the afternoon of April 16, 2013. The video shows Smith in the school at 12:16 p.m. because his son had been hurt at school.

{¶17} Taylor further identified two other videos taken from the mornings of April 17 and 18. On April 17, Taylor stated that the video showed Smith coming through the front entrance of the school at 8:47 a.m., bringing his son to school. On April 18, the video showed Smith in the school at 1:24 p.m. Taylor stated that Smith was there on April 18 to pay for a field trip for

his son.

{¶18} Taylor testified that she spoke with Smith on April 18, 2013, after being contacted by the Lyndhurst Police Department, and informed Smith that he could not come onto school property again or he would be in violation of the protection order. Taylor said that Smith was not happy with her. Taylor testified that at first, Smith denied knowing that M.D. went to that school, but then Smith admitted seeing M.D. at the school on April 16, 2013. Taylor testified that after April 18, school personnel met with Smith outside of school property to discuss Smith's son.

{¶19} M.D. identified herself in the April 16, 2013 video. M.D. said that when she saw Smith at first, he did not say anything to her. But when he walked past her again, after he dropped his son off, he said "hi" and "excuse me" to her. M.D. testified that she had not seen Smith in her school since then.

## The August 2013 Park Incident

{¶20} Terence testified to events that occurred on August 15, 2013. He stated that he decided to take the children and dog to the park, which was "literally" across the street from their house. He said the children rode their bikes while he walked the dog. When they got to the park, he walked the dog around in the grass, and the children played on the playground. While Terence was talking to someone, he saw Smith walk into the park with his dog and his son. Terence said that Smith "made eye contact" with Terence, and then Smith "just kept walking" into the playground. Terence said that they were about 15 to 20 feet apart. Terence testified that he waited "about five minutes" to see if Smith would leave, but Smith remained at the park. At that point, Terence was about to call the police when he saw two police officers arrive. They turned out to be auxiliary police, but Terence stated that he did not know that at the time. The

auxiliary police called the Lyndhurst Police Department.

**{¶21}** Terence testified on cross-examination that he was at the park for about five minutes before Smith and his son arrived. Terence admitted that Smith never approached him in the park.

**{¶22}** At the close of the city's case, Smith moved for a Crim.R. 29 acquittal, which the trial court denied.

**{¶23}** Smith presented his wife, Kathryn Smith, to testify on his behalf. Kathryn testified that on the night of September 12, 2012, she had put her youngest son to bed around 9:00 p.m. Just after putting him to bed, she heard "a very large, loud noise reverberating through the house, music." Kathryn stated that she "freaked out" because she did not want her son to wake up. She looked out the window and saw that the music was coming from Terence's vehicle. Kathryn stated that even after Terence had pulled into his garage, the sound continued for "a little while." When this happened, Kathryn stated that Smith was outside checking their plants.

**{¶24}** After Smith rested, he renewed his Crim.R. 29 motion, which the trial court again denied.

**{¶25}** At the close of the trial, the jury rendered the following verdicts:

**{¶26}** In Case No. 12 CRB 00680, the jury found Smith not guilty of violating the protection order, but guilty of disorderly conduct for the events that occurred on September 17, 2012 (driveway incident).

**{¶27}** In Case No. 13 CRB 00482, the jury found Smith not guilty of violating the protection order for the alleged events of April 16, 2013 (school incident).

**{¶28}** In Case No. 13 CRB 00483, the jury found Smith guilty of violating the protection

order for the events that occurred on April 17, 2013 (school incident).

**{¶29}** In Case No. 13 CRB 00484, the jury found Smith guilty of violating the protection order for the events that occurred on April 18, 2013 (school incident).

**{¶30}** In Case No. 13 CRB 00639, the jury found Smith guilty of violating the protection order for events that occurred on August 15, 2013 (park incident).

**{¶31}** The trial court sentenced Smith as follows:

**{¶32}** In Case No. 12 CRB 00680, for disorderly conduct regarding the driveway incident, the trial court sentenced Smith to a $250 fine, plus costs, 30 days in jail, suspended, and two years of active probation.

**{¶33}** In Case No. 13 CRB 00483, regarding violating the protection order for the April 17, 2013 school incident, the trial court sentenced Smith to a $1,000 fine, plus costs, with $500 of the fine suspended, 180 days in jail, suspended, and two years of active probation.

**{¶34}** In Case No. 13 CRB 00484, regarding violating the protection order for the April 18, 2013 school incident, the trial court sentenced Smith to a $1,000 fine, plus costs, with $500 of the fine suspended, 180 days in jail, suspended, and two years of active probation.

**{¶35}** In Case No. 13 CRB 00639, regarding the August 2013 park incident, the trial court sentenced Smith to a $1,000 fine, plus costs, suspending $500 of the fine, 180 days in jail, suspending 120 of those days, and two years of active probation.

**{¶36}** It is from these judgments that Smith appeals.

<u>Inconsistent Verdicts</u>

**{¶37}** In his first assignment of error, Smith argues that because the jury found him not guilty of the April 16, 2013 school incident, but found him guilty of the April 17 and 18, 2013 school incidents, that the jury's verdicts were inconsistent and as such, "should be set aside."

**{¶38}** Courts have held that consistency between verdicts on separate counts of an indictment is unnecessary. *State v. Thomas*, 9th Dist. Summit Nos. 22990 and 22991, 2006-Ohio-4241, ¶ 15. The same rationale certainly applies to separate charges in separate cases involving separate events, as is the case here.

**{¶39}** In *United States v. Powell*, 469 U.S. 57, 65, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), the United States Supreme Court explained that:

> [I]nconsistent verdicts — even verdicts that acquit on a predicate offense while convicting on the compound offense — should not necessarily be interpreted as a windfall to the government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.

**{¶40}** The Ohio Supreme Court has reiterated this principle, explaining that "a verdict that convicts a defendant of one crime and acquits him of another, when the first crime requires proof of the second, may not be disturbed merely because the two findings are irreconcilable." *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 81. Therefore, a "conviction will generally be upheld irrespective of its rational incompatibility with [an] acquittal [on a separate count]." *State v. Whitlock*, 9th Dist. Summit No. 16997, 1995 Ohio App. LEXIS 3820 (Aug. 30, 1995), *2. *See also Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932); *Powell* at 65.

**{¶41}** After reviewing the law on inconsistent verdicts, it is clear that it does not even apply here because these were separate incidents on separate days.

**{¶42}** Accordingly, Smith's argument within his first assignment of error regarding inconsistent verdicts is without merit and overruled.

<u>Sufficiency of the Evidence</u>

**{¶43}** Also in his first assignment of error, Smith asserts that the city failed to present sufficient evidence that he violated the CSPO on any of the incidents.

**{¶44}** "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), citing *Black's Law Dictionary* 1433 (6th Ed.1990). When an appellate court reviews a record upon a sufficiency challenge, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶45}** R.C. 2919.27, violating protection order, provides in relevant part that "[n]o person shall recklessly violate the terms" of a protection order.

**{¶46}** R.C. 2901.22(C) provides that:

A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

**{¶47}** Regarding the April 17 and 18, 2013 school incidents, Smith argues that the state failed to present sufficient evidence that he acted recklessly. He claims that because he did not even know that M.D. went to the same school as his son, that he could not have acted recklessly. Smith, however, admitted that he saw M.D. on April 16 and, thus, he knew on April 17 and 18 that she attended that school and he still chose to enter the school.

**{¶48}** He furthers argues that because there was no evidence that M.D. was even at

school on April 17 or 18, "the protection [order] is unclear whether or not Mr. Smith's appearance is a violation." We disagree. The protection order states that "respondent shall not enter the * * * school of the protected persons named in this order, including the buildings, grounds, and parking lots of those locations." It does not list any exceptions or modifications that would allow the respondent to enter for any reason, including if the protected person is not there.

{¶49} Finally, he claims that the evidence established that he was not aware that his entering the school violated the protection order. We disagree. As we stated, Smith admitted that he saw M.D. at the school on April 16, 2013. He therefore knew that she attended that school. Thus, the state presented sufficient evidence that Smith recklessly violated the protection order.

{¶50} Regarding the August 2013 park incident, Smith again asserts that he was not aware that he was violating the protection order. He therefore claims that he could not have acted recklessly. We disagree.

{¶51} The protection order states that "respondent shall stay away from protected persons named in this order, and shall not be present within 500 feet * * * of any protected persons, wherever those protected persons may be found," even if "respondent accidentally comes in contact with protected persons in any public or private place." If respondent does come in contact with protected persons accidently, the protection order states that "[r]espondent must depart *immediately*. This order includes encounters on public and private roads, highways, and thoroughfares."

{¶52} According to Terence's testimony, Smith made eye contact with him as he entered the park. This is sufficient evidence to establish that Smith was aware that Terence was there.

Despite seeing Terence, Smith remained at the park, within 20 feet of Terence. Terence called the police after about five minutes, giving Smith time to leave. When Terence realized that Smith was not going to leave, he notified the police. This is sufficient evidence to establish that Smith recklessly violated the protection order.

**{¶53}** Regarding the September 2012 driveway incident, Smith was convicted of disorderly conduct under LCO 648.04(a)(2), which provides that "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another, by * * * [m]aking unreasonable noise or an offensively coarse utterance, gesture, or display, or communicating unwarranted and grossly abusive language to any person[.]" Smith arguments relating to this conviction go toward the weight of the evidence, not sufficiency, because he claims that Terence was not credible. We will therefore address that argument in the next assignment of error regarding manifest weight of the evidence. Smith concedes that the city presented evidence that he called Terence a "cocksucker," but Smith still claims this was not sufficient. We disagree. Calling someone a "cocksucker" violates LCO 648.04(a)(2); nothing more is needed. Thus, the city presented sufficient evidence that Smith violated LCO 648.04(a)(2).

**{¶54}** Accordingly, Smith's first assignment of error is overruled.

### Manifest Weight of the Evidence

**{¶55}** In his second assignment of error, Smith claims that his convictions were against the manifest weight of the evidence.

**{¶56}** Unlike sufficiency of the evidence, a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. *Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541. Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the

judgment is against the weight of the evidence. *Id*., citing *State v. Robinson*, 162 Ohio St. 486, 487, 124 N.E.2d 148 (1955).

{¶57} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as a "thirteenth juror." *Id.* In doing so, it must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id*.

{¶58} Within this assignment of error, Smith incorporated his arguments from his first assignment of error. In doing so, Smith challenges Terence's credibility regarding the park and the driveway incidents. The jury, however, believed Terence over Smith, as it was free to do. Although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the factfinder's determination of the witnesses' credibility. *In re S.H.*, 8th Dist. Cuyahoga No. 100529, 2014-Ohio-2770, ¶ 27, citing *State v. Chandler*, 10th Dist. Franklin No. 05AP-415, 2006-Ohio-2070, ¶ 9. Further, the trier of fact is free to believe or disbelieve all or any of a witness's testimony. *State v. Montgomery*, 8th Dist. Cuyahoga No. 95700, 2011-Ohio-3259, ¶ 10.

{¶59} After review, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

**{¶60}** Accordingly, Smith's second assignment of error is overruled.

**{¶61}** Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Lyndhurst Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
MARY J. BOYLE, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
EILEEN A. GALLAGHER, J., CONCUR