[Cite as *In re D.J.*, 2024-Ohio-738.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE D.J.                                  :
                                            :               No. 112970
A Minor Child                               :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 29, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL-23101709

---

### *Appearances:*

Rosel C. Hurley, III, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Chadwick P. Cleveland, Assistant Prosecuting Attorney, *for appellee*.

EILEEN T. GALLAGHER, J.:

{¶ 1} D.J. ("appellant"), a minor child, appeals his adjudication of delinquency in the Cuyahoga County Court of Common Pleas, Juvenile Division. He raises the following assignments of error for review:

> 1. The trial court erred by finding the juvenile delinquent on Count 1 grand theft of weapons charge and Count 2 tampering with evidence which originated from the same conduct due to the insufficient evidence presented by the state.

2. Under manifest weight review the trial court erred by finding the juvenile delinquent of the grand theft of weapons charge and the subsequent tampering with evidence [charge] as the situation was a self-defense action which allowed the complete elimination of the threat.

{¶ 2} After careful review of the record and relevant case law, we affirm the juvenile court's judgment.

## I. Procedural and Factual History

{¶ 3} On February 7, 2023, appellant was named in a four-count complaint in the juvenile court, charging him with grand theft in violation of R.C. 2913.02(A)(1), with one- and three-year firearm specifications (Count 1); tampering with evidence in violation of R.C. 2921.12(A)(1), with a one-year firearm specification (Count 2); receiving stolen property in violation of R.C. 2913.51(A), with a one-year firearm specification (Count 3); and improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B) (Count 4).

{¶ 4} On April 25, 2023, the matter proceeded to an adjudication hearing, where the following relevant facts were adduced.

{¶ 5} At the hearing, it was established that in November 2022, a bronze, 2017 Kia Sportage was stolen from a parking lot located in Cleveland, Ohio. The owner of the Kia, S.C., testified that a Taurus DT 9 mm handgun was located inside the middle console of the vehicle when it was stolen.

{¶ 6} On November 19, 2022, appellant, then 14-years old, drove the stolen Kia to a drive-thru beverage store located on St. Clair Avenue in Cleveland, Ohio. Appellant was accompanied by his friend, Kenyae Sims ("Sims"), who was sitting in

the passenger's seat of the vehicle. While waiting in the drive-thru line, appellant was approached by two individuals who had exited a silver vehicle that was parked near the entrance of the drive-thru area. The two individuals, later identified as Lawrence McKissic ("McKissic") and Zaveeyon Teasley ("Teasley"), were brandishing firearms while wearing all black clothing and black masks.

{¶ 7} Sims confirmed that appellant exchanged words with McKissic and Teasley as they approached his vehicle. Sims maintained, however, that she exited the vehicle and fled the scene before the confrontation escalated. Thereafter, appellant retrieved a firearm from inside the Kia and, believing his life was in danger, discharged the weapon at McKissic, who had approached the driver's side area of the Kia. McKissic sustained a single gunshot wound to the face. The injury resulted in McKissic's death on November 22, 2022.

{¶ 8} Connor Lally ("Lally") testified that he is employed as a cadet firefighter for the city of Cleveland. On November 19, 2022, Lally was working at his station when an unidentified male came to the garage door and reported that his brother had just been shot at the beverage store. Lally testified that he and another firefighter responded to the scene where they discovered "a gentleman lying face down * * * with blood all around him." (Tr. 26.) Lally testified that when he rolled McKissic over to check his airway, he observed a single gunshot wound on the left side of McKissic's nose. McKissic was breathing on his own; however, he was not moving and was unresponsive. Lally stated that he used a bag-valve mask to assist in McKissic's ventilation until emergency-medical personnel arrived. According to

Lally, no firearm was discovered on McKissic's person during the administration of emergency medical care.

{¶ 9} In the course of the subsequent police investigation, surveillance-video footage depicting the shooting was recovered from the beverage store. The video was played for the trier of fact as the assigned investigator, Detective Jonathan Dayton ("Det. Dayton"), narrated the events as they unfolded. (Tr. 104-112.) In relevant part, Det. Dayton testified that after appellant fired his weapon, McKissic immediately fell to the ground and did not move. (Tr. 115.) Once shots were fired, Teasley immediately fled the scene. In contrast, appellant did not seek safer grounds after the shooting. Instead, appellant exited his stolen vehicle and walked past McKissic's body towards the rear of the drive-thru. Appellant then pointed his gun at the driver of the silver vehicle, L.H., who then ran away from the store. Thereafter, appellant's precise movements inside the drive-thru area were obstructed from view. However, appellant is seen returning to the stolen vehicle approximately 20 seconds after the initial shot was fired. He then drove away from the beverage store before the police arrived at the scene. Det. Dayton reiterated that the firearm McKissic was seen brandishing on the surveillance-video footage was not discovered on his person by the responding officers or medical personnel.

{¶ 10} At the conclusion of the hearing, the parties offered closing arguments. In pertinent part, defense counsel argued that appellant's use of self-defense against McKissic and Teasly extended to his conduct after the shooting was completed. Defense counsel summarized his position as follows:

The state reviewed the same facts presented to this court and found that this was a justified shooting. It logically extends to [appellant's] right to protect his own life by removing the continuing threat. What that meant was removing the firearm from someone who could still access it, someone who entered the building with the intent to possibly kill him.

(Tr. 130-131.)

{¶ 11} On May 4, 2023, the juvenile court rendered a verdict, adjudicating appellant delinquent of all counts and firearm specifications alleged in the complaint. With respect to appellant's self-defense claim, the court summarized its findings as follows:

Ms. Sims gets out of the car, she starts running at 3:29, and the car in front of [the] bronze Kia simultaneously starts moving out of the drive-through. It was at this point that Ms. Sims testified that she heard a gun go off. Both the girl and the car [were] out of the drive-through by 3:31.

Then, [appellant] gets out of the Kia to go to the, I guess I'll call it the back entrance of the drive-through. This is a break in any claim of self-defense, as the child never needed to open the car door, let alone get out of the car. He could have driven straight out and away from Mr. McKissic or anyone else who was behind him.

This is issue number two, the separate issue. Fire Fighter Connor Lally testified that Lawrence McKissic was shot in the face. There was one wound on the left side of his nose. When he and his partner arrived on scene, Mr. McKissic was lying face down on the cement floor in the beverage drive-through in a pool of blood, and he was not moving.

* * *

Significantly, his head, his arms, his feet, his legs, nothing else moves. And given all of the other testimony * * * it does not support the argument that the gun had to be taken for self defense.

(May 2, 2023, tr. 11-14.)

{¶ 12} At the time of disposition, the juvenile court committed appellant to the Ohio Department of Youth Services for a total minimum term of two years and six months up to a maximum term of his twenty-first birthday.

{¶ 13} Appellant now appeals from the juvenile court's judgment.

## II. Law and Analysis

### A. Sufficiency and Manifest Weight of the Evidence

{¶ 14} In the first and second assignments of error, appellant argues the evidence presented at trial was not sufficient to support an adjudication of delinquency on the offenses of grand theft and tampering with evidence. He further contends that the adjudications were against the manifest weight of the evidence. Notably, appellant does not challenge the evidence supporting the adjudications on Counts 3 or 4 of the complaint.

{¶ 15} A juvenile court may adjudicate a juvenile to be a delinquent child when the evidence demonstrates, beyond a reasonable doubt, that the child committed an act that would constitute a crime if committed by an adult. R.C. 2151.35(A); Juv.R. 29(E)(4); *In re R.S.*, 8th Dist. Cuyahoga No. 99562, 2013-Ohio-5576, ¶ 26; *In re Williams*, 3d Dist. Marion No. 9-10-64, 2011-Ohio-4338, ¶ 18. "[D]ue to the 'inherently criminal aspects' of delinquency proceedings," claims involving the sufficiency of the evidence and the manifest weight of the evidence in delinquency appeals are subject to the same standards of review applicable to criminal convictions. *In re T.J.*, 9th Dist. Summit No. 27269, 2014-Ohio-4919, ¶ 19, quoting *In re R.D.U.*, 9th Dist. Summit No. 24225, 2008-Ohio-6131, ¶ 6; *In re R.S.*

at ¶ 26, citing *In re Watson*, 47 Ohio St.3d 86, 91, 548 N.E.2d 210 (1989); *see also In re S.H.*, 8th Dist. Cuyahoga No. 100529, 2014-Ohio-2770, ¶ 17, 25.

**{¶ 16}** A sufficiency challenge requires a court to determine whether the state has met its burden of production at trial and to consider not the credibility of the evidence but whether, if believed, the evidence presented would sustain a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶ 17}** "'Proof of guilt may be made by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value.'" *State v. Rodano*, 2017-Ohio-1034, 86 N.E.3d 1032, ¶ 35 (8th Dist.), quoting *State v. Zadar*, 8th Dist. Cuyahoga No. 94698, 2011-Ohio-1060, ¶ 18. Although circumstantial evidence and direct evidence have obvious differences, those differences are irrelevant to the probative value of the evidence, and circumstantial evidence carries the same weight as direct evidence. *Id.*, citing *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. Further, circumstantial evidence is not only sufficient, ""'but may also be more certain, satisfying, and persuasive than direct evidence.'"" *Id.* at ¶ 36, quoting *State v.*

*Hawthorne*, 8th Dist. Cuyahoga No. 96496, 2011-Ohio-6078, quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960).

{¶ 18} In contrast to a sufficiency argument, a manifest-weight challenge questions whether the state met its burden of persuasion. *State v. Armstrong*, 8th Dist. Cuyahoga No. 109709, 2021-Ohio-1087, ¶ 24. When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the appellate court functions as a "thirteenth juror" and may disagree "with the factfinder's resolution of * * * conflicting testimony." *Thompkins*, 78 Ohio St.3d 387, 678 N.E.2d 541, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The appellate court examines the entire record, weighs the evidence and all reasonable inferences that may be drawn therefrom, considers the witnesses' credibility and determines whether, in resolving conflicts in the evidence, the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Reversal on manifest-weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin* at 175.

{¶ 19} A trier of fact is free to believe all, some, or none of the testimony of each witness testifying at trial. *State v. Jones*, 8th Dist. Cuyahoga No. 108371, 2020-Ohio-3367, ¶ 85; *State v. Sheline*, 8th Dist. Cuyahoga No. 106649, 2019-Ohio-528, ¶ 100. Thus, "[a] conviction is not against the manifest weight of the evidence simply

because the jury believed the testimony of the state's witnesses and disbelieved the defendant." *Id.*

{¶ 20} Relevant to this appeal, appellant was adjudicated delinquent of grand theft in violation of R.C. 2913.02(A)(1) and tampering with evidence in violation of R.C. 2921.12(A)(1).

{¶ 21} The grand theft statute provides, in pertinent part:

(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

(1) Without the consent of the owner or person authorized to give consent;

* * *

(4) If the property stolen is a firearm or dangerous ordnance, a violation of this section is grand theft. Except as otherwise provided in this division, grand theft when the property stolen is a firearm or dangerous ordnance is a felony of the third degree, and there is a presumption in favor of the court imposing a prison term for the offense.

{¶ 22} A person acts "purposely" when "it is the person's specific intention to cause a certain result." R.C. 2901.22(A). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). In determining whether the defendant acted knowingly or purposely, the jury may infer the defendant's state of mind from the surrounding circumstances. *State v. Sharp*, 8th Dist. Cuyahoga No. 103445, 2016-Ohio-2634, ¶ 19, citing *State v. Rock*, 3d Dist. Seneca No. 13-13-38, 2014-Ohio-1786, ¶ 13.

{¶ 23} R.C. 2913.01(C) defines "deprive" as follows:

(1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;

(2) Dispose of property so as to make it unlikely that the owner will recover it;

(3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.

{¶ 24} In turn, R.C. 2921.12(A), which prohibits tampering with evidence provides that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]"

{¶ 25} In examining R.C. 2921.12(A)(1), the Ohio Supreme Court acknowledged that there are three elements to tampering with evidence: "(1) the knowledge of an official proceeding or investigation in progress or likely to be instituted; (2) the alteration, destruction, concealment, or removal of the potential evidence; and (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation." *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 11. "Likelihood is measured at the time of the act of alleged tampering." *Id.* at ¶ 19. "Knowledge that a criminal investigation is imminent is based upon a reasonable person standard." *State v. Evans*, 8th Dist. Cuyahoga No. 108648, 2020-Ohio-3968, ¶ 75, citing *State v. Workman*, 2015-Ohio-

5049, 52 N.E.3d 286, ¶ 51 (3d Dist.). "Moreover, circumstantial evidence can be relied on to establish that a defendant has purposely impaired the availability of evidence." *Id.* at ¶ 80, citing *State v. McGee*, 1st Dist. Hamilton No. C-150496, 2016-Ohio-7510, ¶ 28.

### 1. Ownership of Firearm

{¶ 26} On appeal, appellant does not dispute that he removed the firearm from McKissic's person before he fled the scene. (Tr. 13.) He nevertheless argues "the prosecution failed to establish every element of Count One, grand theft of a firearm by not establishing ownership of the firearm in question." Appellant states that "no testimony was presented stating ownership of the firearm in question and no documents were presented." We find no merit to appellant's position.

{¶ 27} R.C. 2913.01(D) defines an owner as follows:

> "Owner" means, unless the context requires a different meaning, any person, other than the actor, who is the owner of, who has possession or control of, or who has any license or interest in property or services, even though the ownership, possession, control, license, or interest is unlawful.

{¶ 28} The Supreme Court of Ohio has succinctly stated that the focus of the ownership statute is whether a defendant has lawful ownership at the time of the offense:

> It is apparent from the language of R.C. 2913.01(D) that title ownership in a specific person other than the defendant is not an element of a theft offense. Indeed under this definition a thief can steal from a thief.
>
> * * *
>
> It is * * * the defendant's relationship to the property which is controlling. The important question is not whether the person from

whom the property is stolen was the actual owner, but rather whether
the defendant had any lawful right to possession.

*State v. Rhodes*, 2 Ohio St.3d 74, 76, 442 N.E.2d 1299 (1982). Thus, "the gist of a

theft offense is the wrongful taking by the defendant, not the particular ownership

of the property." *State v. Jones*, 8th Dist. Cuyahoga No. 92921, 2010-Ohio-902,

¶ 12, citing *State v. Thomas*, 8th Dist. Cuyahoga No. 87666, 2006-Ohio-6588.

{¶ 29} Consistent with the foregoing, we find the state's alleged failure to

establish title ownership of the firearm removed from McKissic's person was not

material. Rather, the state was "merely [required] to prove that [appellant] deprived

someone of property who had 'possession or control of, or any license or any interest

in' that property." *Rhodes* at 76, quoting R.C. 2913.01(D). Here, there is no dispute

that appellant removed a firearm from McKissic that was previously in McKissic's

possession or under his control. Accordingly, McKissic was the "owner" of the

firearm as defined by R.C. 2913.01(D), and as contemplated under R.C.

2913.02(A)(1). We therefore turn to the evidence supporting the remaining

elements of the offenses.

### 2. Evidence Presented

{¶ 30} In this case, the evidence presented at trial demonstrated that

appellant drove a stolen vehicle to a beverage store located in Cleveland, Ohio. At

all relevant times, appellant was in possession of a firearm. While waiting in the

beverage store's drive-thru line, appellant's stolen vehicle was approached by

McKissic and Teasley, who were brandishing firearms. Believing his life was in

imminent danger, appellant discharged his weapon, resulting in a fatal gunshot

wound to McKissic. Once the shooting was completed, appellant's ability to exit the beverage store's drive-thru was unobstructed. However, rather than fleeing the scene and any remaining danger, appellant exited the stolen vehicle and walked to the rear entrance of the drive-thru. Appellant remained in the drive-thru area for approximately 20 seconds before he eventually returned to the stolen vehicle and left the beverage store. During this intervening time period, appellant was the only individual who had access to McKissic, who was severely injured and not moving on the concrete floor. Trial counsel did not dispute, and the circumstantial evidence reveals, that appellant removed the firearm from McKissic's control before he fled the beverage store.

{¶ 31} Viewing this evidence in a light most favorable to the prosecution, we find a reasonable trier of fact could conclude, beyond a reasonable doubt, that appellant knowingly, and without consent, obtained control of the firearm previously in McKissic's possession with the specific purpose to deprive McKissic of the property. As discussed further below, McKissic did not pose a threat to appellant's safety at the time appellant unnecessarily exited his stolen vehicle. As such, a reasonable trier of fact could infer from the totality of the surrounding circumstances that appellant took advantage of McKissic's inert condition and acted with the specific intention to withhold the firearm from McKissic on a permanent basis.

{¶ 32} Regarding the tampering offense, we find the same trier of fact could have found that a reasonable person in appellant's position would have known that

an official investigation into the shooting was in progress or likely to be instituted at the time he removed McKissic's firearm from the scene. In this case, the shooting occurred in a public place and in the presence of several innocent bystanders. Thus, a police investigation into the deadly shooting was imminent.

{¶ 33} Finally, we find sufficient, circumstantial evidence supports the conclusion that appellant removed the firearm from the scene with the specific intention of impairing its availability in the criminal investigation. This case presents the unique scenario where the evidence removed from the crime scene (1) is the same property underlying the theft claim,[1] and (2) would have further corroborated appellant's self-defense claim had he been charged in relation to the shooting. Nevertheless, we find appellant's purpose to impair the firearm's availability could be reasonably inferred from the circumstantial evidence establishing that the firearm was not recovered once appellant was identified as the shooter during the police investigation. *See State v. McGee*, 1st Dist. Hamilton No. C-150496, 2016-Ohio-7510, ¶ 29 ("McGee's specific intent to impair the investigation after the shooting can be inferred from the fact that police could not find the gun[.]"). Accordingly, we find appellant's juvenile adjudications are supported by sufficient evidence.

{¶ 34} The first assignment of error is overruled.

---

[1] *See United States v. Technodyne L.L.C.*, 753 F.3d 368, 385 (2d Cir. 2014) ("It is commonplace that the law recognizes that there may be multiple motives for human behavior; thus, a specific intent need not be the actor's sole, or even primary, purpose.").

### 3. Self-Defense

{¶ 35} Regarding the manifest weight of the evidence claim, appellant argues the state failed to meet its burden of persuasion where the evidence demonstrates that he acted in self-defense during the entirety of the incident on November 19, 2022. Appellant contends that he had the right "to eliminate the continuing threat based upon the limited information known to him in the split-seconds it took to defend his life[.]" Stated another way, appellant asserts that he "was in the act of self-defense when he removed the weapon [from McKissic's person] to ensure his safety from future harm."

{¶ 36} "Under Ohio law, a person is permitted to act in self-defense." *State v. Williams*, 8th Dist. Cuyahoga No. 111620, 2023-Ohio-1903, ¶ 29. A self-defense claim includes the following elements:

> "(1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger."

*State v. Messenger,* 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶ 14, quoting *State v. Barnes,* 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002).

{¶ 37} Revised Code 2901.05(B)(1) describes the process of raising this affirmative defense at trial and reads, in relevant part:

> If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, * * * the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense * * *.

R.C. 2901.05(B)(1).

{¶ 38} Under R.C. 2901.05(B)(1),"[t]he defendant has the initial burden of production, which is the burden of producing evidence that 'tends to support' that the defendant used the force in self-defense." *State v. Davidson-Dixon*, 2021-Ohio-1485, 170 N.E.3d 557, ¶ 18 (8th Dist.), quoting R.C. 2901.05(B)(1); *Messenger* at ¶ 21 (indicating that self-defense is still an affirmative defense and the burden of production is still on the defendant).

{¶ 39} If the defendant meets his or her initial burden of producing evidence tending to support a claim of self-defense, the burden then shifts to the state to establish its burden of persuasion to prove beyond a reasonable doubt that the defendant did not use force in self-defense. *State v. Ratliff*, 8th Dist. Cuyahoga No. 111874, 2023-Ohio-1970, ¶ 26. The state's burden of persuasion is subject to a manifest-weight review on appeal. *Messenger,* 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, at ¶ 27. To satisfy this burden of proof, the state must disprove at least one of the elements of self-defense. *Davidson-Dixon* at ¶ 18.

{¶ 40} In this case, appellant was not charged with an offense directly relating to McKissic's death due to the state's determination that appellant was justified in using deadly force. (Tr. 14.) The state maintained, however, that the self-defense claim did not apply to the criminal acts committed after the initial threat was neutralized.

{¶ 41} Preliminarily, we note that appellant has not identified any case law to suggest the affirmative defense of self-defense would apply to the deprivation or

impairment of property after the underlying use of force is completed. *See State v. Washington*, 10th Dist. Franklin No. 99AP-640, 2000 Ohio App. LEXIS 2417 (June 8, 2000) (finding defendant's theft of a police cruiser did not fall within the parameters of a self-defense claim.). As referenced above, R.C. 2901.05(B)(1) contemplates a person's use of force as opposed to a person's removal of property without consent or for an unlawful purpose.

{¶ 42} Nevertheless, to the extent appellant contends that the greater weight of the evidence demonstrates that he only removed the weapon from McKissic's person with the specific intent to eliminate a continuing threat, we find no merit to such an assertion. As astutely recognized by the juvenile court, the evidence presented at trial demonstrated that McKissic was immediately rendered immobile and unresponsive due to the significant injuries caused by the gunshot wound to his face. The video surveillance footage reflects that McKissic was lying face down on the ground after the shooting and he did not move until emergency responders turned him over to render medical aid on the scene. Firefighter Lalley, who responded to the scene shortly after the shooting, testified that McKissic was covered in blood. McKissic had trouble breathing, was unresponsive, and was not moving on his own.

{¶ 43} Under these circumstances, we find the evidence presented by the prosecution established that appellant could not have had an objectively reasonable belief that he was in immediate danger of death or great bodily harm at the time he completed the grand-theft and tampering-with-evidence offenses. *See State v.*

*Hughkeith*, 2023-Ohio-1217, 212 N.E.3d 1147, ¶ 56 (8th Dist.). Accordingly, we are unable to conclude that the trier of fact lost its way in finding that appellant obtained control of McKissic's firearm for the purposes of depriving McKissic of the property while simultaneously impairing its availability during the imminent criminal investigation. The adjudications of delinquency are not against the manifest weight of the evidence.

{¶ 44} The second assignment of error is overruled.

{¶ 45} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
MARY J. BOYLE, J., CONCUR