[Cite as *State v. Scott*, 2017-Ohio-9193.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio, :

    Plaintiff-Appellee, :

                                        No. 16AP-233
v. : (C.P.C. No. 15CR-2437)

Lillie A. Scott, : (REGULAR CALENDAR)

    Defendant-Appellant. :

---

D E C I S I O N

Rendered on December 21, 2017

---

**On brief:** *Ron O'Brien,* Prosecuting Attorney, and *Michael P. Walton,* for appellee.

**On brief:** *Wolfe Van Wey & Associates, LLC,* and *Stephen T. Wolfe,* for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Defendant-appellant, Lillie A. Scott ("Scott"), appeals from a jury verdict finding her guilty of theft, in violation of R.C. 2913.02, of rent money owed to WC Management, a property management company. For the reasons set forth below, we reverse Scott's conviction.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

{¶ 2} A grand jury indicted Scott on one count of theft, in violation of R.C. 2913.02, on May 19, 2015. The indictment alleged that between September 2 and September 12, 2014, Scott:

> [D]id with purpose to deprive the owner, WC Management, of property or services, to wit: US currency, did knowingly obtain or exert control over the property or services without the consent of the owner or person authorized to give consent

and/or beyond the scope of the express or implied consent of the owner or person authorized to give consent and/or by deception.

{¶ 3} Because the indictment alleged that Scott had stolen property or services valued at more than $1,000, but less than $7,500, the theft was charged as a fifth degree felony. R.C. 2913.02(B)(2). (May 19, 2015 Indictment.)

{¶ 4} Trial commenced on February 22, 2016. After the jury was empaneled, but before opening arguments, Scott's attorney moved to exclude any mention of Close to Home Realty, another property management company, as a victim in the case. She noted that the indictment only identified WC Management as the victim of the alleged theft. (Feb. 23, 2016 Tr. Vol. 2 at 28-29.)

{¶ 5} The prosecutor argued that Scott had worked as an employee for both entities and that WC Management was the ultimate victim because both companies "were meshed together in such a way that WC Management did suffer the loss" from the theft. (Tr. Vol. 2 at 30.) Scott's attorney countered that the state was attempting to allow a third party, WC Management, to step into the shoes of the actual victim, Close to Home Realty, after reimbursing it for its loss. (Tr. Vol. 2 at 30-32.)

{¶ 6} The state then asserted that Scott's motion was untimely under Crim.R. 12(C)(2), and offered to amend the indictment under Crim.R. 7 so that Close to Home Realty would also be named as a victim. Scott's attorney noted that allowing such an amendment would prejudice the defense because she had been "not allowed to get any information off of that second subpoena, which was specifically for Close to Home." (Tr. Vol. 2 at 38.) The trial court expressed concern that if Close to Home Realty were the actual victim, "it would be prejudicial to your client to add that company now as a victim," and declined to allow an amendment of the indictment under Crim.R. 7. (Tr. Vol. 2 at 39.) After this discussion, Scott's trial began.

{¶ 7} Deborah Shannon, a bookkeeper, testified that WC Management was owned by Steve Close, while Close to Home Realty was owned by his son, Alex Close. (Tr. Vol. 2 at 68.) She testified that Steve Close received "all the income" from Close to Home Realty. (Tr. Vol. 2 at 72.) Shannon testified that although she had previously handled the books for Close to Home Realty while another bookkeeper, Sharon Halloy, kept the WC

Management books, Shannon now handled the books for both companies. (Tr. Vol. 2 at 73-74.)

{¶ 8} Shannon described Scott as a receptionist who sat at the front desk and "took applications, greeted people when they came in the door, took work orders from tenants for maintenance," and received rent payments from tenants. (Tr. Vol. 2 at 74-75.) The process for accepting rent payments involved writing a receipt from a receipt book and then placing the money and a copy of the receipt in the upstairs accounting office. (Tr. Vol. 2 at 75.) The employee accepting payment placed the money in a safe. The same safe was used for the money for both WC Management and Close to Home Realty, but the bookkeepers would then separate the money before making each company's bank deposits, as the companies had accounts at separate banks. (Tr. Vol. 2 at 76, 135.) The office was locked when the bookkeepers left. Although the office had a security camera, it did not work. (Tr. Vol. 2 at 76-77.) After sending several emails to her coworkers stating that she was ill in September 2014, Scott left her employment at WC Management at the end of that month. (Tr. Vol. 2 at 84.)

{¶ 9} The month after Scott left, WC Management sent out eviction notices to several tenants who subsequently came to the office with receipts showing that they had paid the rent in question. (Tr. Vol. 2 at 89-92.) The tenant at 101 Woodcliff brought in a receipt numbered 329386 showing a payment of $386 on September 2, 2014. (State's Ex. A-3.) A tenant from 55 Woodcliff brought a receipt numbered 333246 showing that payment was made on September 2, 2014, in the amount of $773. (State's Ex. C-3.) A receipt numbered 333261 stated that $773 had been paid for rent at 97 Midcliff on September 5, 2014. (State's Ex. D-2.) A fourth receipt, numbered 333268 and dated September 5, 2014, showed payment for rent at 106 Woodcliff in the amount of $663. (State's Ex. B-2.)

{¶ 10} All the receipts were signed by Scott. Close to Home Realty had only one receipt in its records for these rent payments, numbered 329766 for the property at 55 Woodcliff, and it demonstrated partial payment in the amount of $200. It was also signed by Scott. (Feb. 24, 2016 Tr. Vol. 3 at 208.) The receipts were all from tenants who leased their properties from Close to Home Realty. (Feb. 23, 2016 Tr. Vol. 2 at 110.) The properties in question were owned and managed by Close to Home Realty. (Tr. Vol. 2 at 175.)

{¶ 11} Andrew Lawless also testified. He began working for WC Management at the end of September 2014 as Scott's replacement. (Feb. 24, 2016 Tr. Vol. 2 at 189-91.) Lawless sent out eviction notices in mid-October. (Tr. Vol. 2 at 192.) After tenants began bringing in the receipts to prove they had paid their rent, he began an "internal investigation" of the discrepancies. (Feb. 24, 2016 Tr. Vol. 3 at 206.) In addition to not finding any record of the payments on the tenants' receipts, Lawless also determined that the receipt book from which the receipts bearing the "333" prefix was missing from the office. (Tr. Vol. 3 at 213.) According to Lawless, the total amount of money that was missing was $2,375. (Tr. Vol. 3 at 214.)

{¶ 12} Sharon Halloy worked as an accountant for WC Management for two years until leaving in April 2015. (Tr. Vol. 3 at 241.) She left because she did not like how accounting procedures were handled there and because she did not approve of how Alex Close treated the tenants. (Tr. Vol. 3 at 241-42.) Halloy also stated that no one had been able to find the receipt book from which the receipts issued by Scott had been written. (Tr. Vol. 3 at 248.)

{¶ 13} Scott's defense consisted of two witnesses. First, she called Joe Durham, an attorney for the city of Whitehall that had been involved in litigation involving WC Management and its properties. (Tr. Vol. 3 at 298.) Durham testified that he had called Scott to testify in a contempt proceeding alleging that WC Management, Alex Close, and Steve Close had violated a court order not to rent or lease housing units without a certificate of occupancy issued by the city of Whitehall. (Tr. Vol. 3 at 301-02.)

{¶ 14} Second, Scott testified in her own defense. She stated that she worked for WC Management and Close to Home Realty from January until September 2014. (Tr. Vol. 3 at 305-06.) Scott unsuccessfully tried to get Alex Close and his father to take care of the tenants' maintenance issues. (Tr. Vol. 3 at 306-07.) She testified that rent collection was among her duties, and that she was often told by accountants to write up receipts in particular amounts after sending rent up to them. (Tr. Vol. 3 at 315-16.) Multiple receipts would indicate that a tenant's payment went towards something like a water bill in addition to rent. (Tr. Vol. 3 at 335.) Scott denied taking any of the money she was accused of, denied knowing where the receipt book was, and stated that she turned all amounts into the accounting office after receiving them from tenants. (Tr. Vol. 3 at 234, 338.) Scott believed that her accusers were motivated by the fact that Close to Home Realty lost its

business managing a number of properties to the company that she immediately went to work for. (Tr. Vol. 3 at 334-35.)

{¶ 15} Scott's attorney moved the trial court for a judgment of acquittal under Crim.R. 29, which was denied. (Tr. Vol. 3 at 290-93.) The jury returned a verdict of guilty on the charge of theft, but as a first degree misdemeanor, as the jury found that the amount in question was less than $1,000. (Feb. 26, 2016 Verdict.) Scott received no jail time or fine, but was ordered to pay court costs. (Mar. 10, 2016 Am. Jgmt. Entry.)

{¶ 16} Scott filed a timely notice of appeal and asserts the following assignments of error:

> [I.] THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS.
>
> [II.] THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29.
>
> [III.] THE JURY'S VERDICTS WERE AGAINST THE MANIFEST WIGHT OF THE EVIDENCE.

## II. FIRST AND SECOND ASSIGNMENTS OF ERROR

{¶ 17} Because appellate review of "the denial of a Crim.R. 29 motion and of the sufficiency of the evidence apply the same standard," we jointly consider Scott's first two assignments of error. *State v. Diggs*, 10th Dist. No. 14AP-18, 2014-Ohio-3340, ¶ 29, citing *State v. Fugate*, 10th Dist. No. 12AP-194, 2013-Ohio-79, ¶ 5.

{¶ 18} Under Crim.R. 29(A), a trial court must "order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 37, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency is a test of adequacy." *Id.*, citing *Thompkins.* "The standard when testing the sufficiency of the evidence ' "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." ' " *State v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, ¶ 15, quoting *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 70, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of

the syllabus. A reviewing court "will not disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.' " *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, ¶ 94, quoting *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

{¶ 19} Scott makes two arguments to support her contention that the evidence was legally insufficient to support her conviction. First, she argues that the evidence was insufficient to demonstrate that she was responsible for the missing rent payments. (Appellant's Brief at 7.) Second, she argues that the evidence was insufficient to prove that any theft from WC Management occurred. (Appellant's Brief at 8.)

{¶ 20} A challenge to the legal sufficiency of the evidence implicates a defendant's right to due process. *Tibbs v. Florida*, 457 U.S. 31, 45 (1982); *State v. Draper*, 10th Dist. No. 01AP-237 (2001). Among the due process protections enumerated in Article I, Section 10 of the Ohio Constitution is the following: "no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury." The purpose of this provision is to guarantee "the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury." *State v. Headley*, 6 Ohio St.3d 475, 478 (1983). The charging statement of the indictment may be made "in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." Crim.R. 7(B).

{¶ 21} In certain instances, "a material variance between the allegations in the indictment and the proof at trial" may be cause for dismissal. *State v. Overholt*, 9th Dist. No. 02CA0108-M, 2003-Ohio-3500, ¶ 55, citing *State v. Pittman*, 9 Ohio St.2d 186 (1967). However, a verdict may not be "set aside, nor shall any judgment of conviction be reversed" based on any "variance between the allegations and the proof thereof, unless the defendant is misled or prejudiced thereby." Crim.R. 33(E).

{¶ 22} In language that largely tracked the statutory definition of theft, Scott's indictment alleged that she did "knowingly obtain or exert control over the property or services without the consent of the owner or person authorized to give consent and/or beyond the scope of the express or implied consent of the owner or person authorized to give consent and/or by deception." *See* R.C. 2913.02(A)(1) through (3). This language

gave Scott sufficient "notice of all the elements of the offense" in question under Crim.R. 7(B).

{¶ 23} However, the indictment identified "the owner" of the stolen "property or services" as WC Management. This differed from the evidence of theft at trial. Close to Home Realty was the only entity owed the rent that Scott was charged with taking. She wrote receipts for rent to tenants of Close to Home Realty after accepting rent, and that entity, not WC Management, owned and managed those tenants' properties. Close to Home Realty and WC Management were unquestionably separate entities. In spite of the state's attempt to characterize them as intermingled, they were distinct entities with different owners, as well as separate bank accounts. For this reason, the state's evidence varied from the indictment.[1]

{¶ 24} Standing alone, however, this variance is insufficient grounds to reverse Scott's conviction because a victim's name is not an element of the offense of theft.  In *State v. Shoemaker*, 96 Ohio St. 570 (1917), the Supreme Court of Ohio reversed a trial court that had dismissed an indictment for vehicle theft that named the incorrect owner of the vehicle and held that the variance was "not fatal" without a showing of prejudice to the defendant, as "[t]he gist of the offense was not the particular ownership of the property, but the 'wrongful' taking."

{¶ 25} Similarly, in *Overholt* at ¶ 57, a defendant charged with receiving stolen property under R.C. 2913.51 argued that his indictment should have been dismissed because a variance between the indictment's misidentification of a vehicle's owner as his father and the evidence at trial was "material in nature." The Ninth District rejected this argument because "this minor variation, if a variation at all, made no difference to the nature of the charge. The identity of the owner of the stolen property is not an element of the offense and an addition or change thereof does not generally change the name or identity of the crime charged." *Id.* Here, as well, the victim's name is not an element of theft, the offense Scott was charged with. *See* R.C. 2913.02(A).

---

[1] Typically, such variance is cured by amending the indictment, as Crim.R. 7(D) states that "[a] court may at any time before, during, or after a trial amend the indictment * * * in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." With a theft offense, such amendment is allowable because "[t]he identity of the owner of the stolen property is not an element of the offense and an addition or change thereof does not generally change the name or identity of the crime charged." *State v. Overholt*, 9th Dist. No. 02CA0108-M, 2003-Ohio-3500, ¶ 57. In this case, the trial court overruled the state's request to amend the indictment.

{¶ 26}   As Crim.R. 33(E) states, a defendant must show that she was "misled or prejudiced" by the variance before a court may reverse her conviction. Scott's brief mentions one troubling circumstance. (Appellant's Brief at 1-2.) After finding out that the actual victim of the theft alleged against Scott was Close to Home Realty, her attorney subpoenaed, and was denied, records regarding that entity. (Feb. 23, 2016 Tr. Vol. 2 at 37-39.) The trial court stated that if Close to Home Realty was the actual victim of the theft, "then we have a dilemma because [Scott's attorney] was not provided full information with respect to Close to Home pursuant to her request." (Tr. Vol. 2 at 39-40.) The evidence at trial demonstrated that Close to Home Realty was the victim of the theft. Thus, Scott not only had a discovery request regarding the actual victim of the theft denied because the indictment named another victim, but had to mount a defense at trial after that denial. The state's brief is silent on these issues, and simply asserts that "the victim being WC Management is not an element of the offense." (Appellee's Brief at 8.)

{¶ 27}   Accepting the trial court's assessment of this situation, we conclude that Scott suffered sufficient prejudice to warrant reversal of her conviction. Because reversal is warranted on these grounds, we need not reach her second argument in support of the first and second assignments of error, and her third assignment of error is moot.[2]

{¶ 28} For the foregoing reasons, we sustain the first and second assignments of error and find the third assignment of error is rendered moot.  Accordingly, Scott's conviction is reversed and this case is remanded.

*Judgment reversed; case remanded.*

DORRIAN, J., concurs.
SADLER, J., dissents.

---

[2] The dissent's position that we have "addressed an issue not raised or preserved by appellant on appeal" is not supported by our opinion or the record. (Dissent at ¶ 1.) The dissent asserts that we have failed to "address the issues raised by appellant in her first and second assignments of error." *Id.* at ¶ 2. But the sole ground for reversal is the insufficiency of the evidence, the issue raised by the first and second assignments of error. Scott specifically argues in her brief that it was legally insufficient to convict her for theft from WC Management because the evidence only pertained to Close to Home Realty. (Appellant's Brief at 8.) The dissent appears to take issue with the reliance on Crim.R. 33(E)'s requirement of a showing of prejudice, but Scott's brief specifically mentions the prejudice she suffered by the denial of the discovery motion, which was argued in the trial court. (Appellant's Brief at 1-2; Feb. 23, 2016 Tr. at 38-39.)

SADLER, J., dissenting.

{¶ 29} Because I believe the majority has addressed an issue not raised or preserved by appellant on appeal, I respectfully dissent.

{¶ 30} "This court rules on assignments of error, not mere arguments." *Huntington Natl. Bank v. Burda*, 10th Dist. No. 08AP-658, 2009-Ohio-1752, ¶ 21, quoting App.R. 12(A)(1)(b) (stating that " 'a court of appeals shall * * * [d]etermine the appeal on its merits on the assignments of error set forth in the briefs' "); *Williams v. Barrick*, 10th Dist. No. 08AP-133, 2008-Ohio-4592, ¶ 28 (holding that appellate courts "rule[] on assignments of error only, and will not address mere arguments").

{¶ 31} After finding that the identity of the owner of the stolen property is not an element of the offense, the majority reverses appellant's theft conviction finding that appellant suffered "sufficient prejudice to warrant reversal of her conviction."  (Majority Decision at ¶ 27.)  This stated basis for reversal and discussion of Crim.R. 33 does not address an issue preserved or argued on appeal by appellant.  Simply put, appellant did not file a motion for a new trial in the trial court, and this is not an appeal from a trial court decision denying a motion for new trial.  Appellant does not argue in her first or second assignments of error that she was prejudiced by a variance between the allegations in the indictment and the proof at trial, nor does appellant cite Crim.R. 33 as a basis for this appeal.

{¶ 32} Because appellant's first and second assignments of error challenge only the sufficiency of the evidence and the appropriateness of the court's overruling of appellant's motion for acquittal, I would consider only these questions when ruling on those assignments of error.

{¶ 33} Accordingly, I would address fully appellant's three assignments of error. Because the majority does not, I respectfully dissent.

———————————————