[Cite as *State v. Holloway*, 2024-Ohio-3189.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                       No. 113296

    v.                                        :

CASE HOLLOWAY,                          :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART, AND
                REMANDED
**RELEASED AND JOURNALIZED:** August 22, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-673380-C

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and James D. May, Assistant Prosecuting
Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and
Rick Ferrara, Assistant Public Defender, *for appellant.*

KATHLEEN ANN KEOUGH, A.J.:

{¶ 1} Defendant-appellant, Case Holloway, appeals his convictions following a jury trial. For the reasons that follow, we find some merit to the appeal

and, thus, we affirm in part, reverse in part, and remand the matter to the trial court for resentencing on Counts 3, 7, 18, and 25.

## I.  Procedural History

{¶ 2}  In May 2022, the State named Holloway and his codefendants in a 30-count indictment that stemmed from a series of large-scale liquor thefts at Giant Eagle stores in Northeast Ohio.  Specific to Holloway, the State charged him with,

Count 1:  Engaging in a Pattern of Corrupt Activity, a felony of the first degree, in violation of R.C. 2923.32(A)(1).

Count 2:  Conspiracy, a second-degree felony, in violation of R.C. 2923.01(A)(2).

Count 3:  Grand theft, a felony of the fourth degree, in violation of R.C. 2913.02(A)(1).

Count 5:  Felonious Assault, a first-degree felony, in violation of R.C. 2903.11(A)(2), with a furthermore specification that the victim was a peace officer.

Count 6:  Robbery, a felony of the second degree, in violation of R.C. 2911.02(A)(2).

Count 7:  Theft, a fifth-degree felony, in violation of R.C. 2913.02(A)(1).

Count 8:  Petty Theft, a misdemeanor of the first degree, in violation of R.C. 2913.02(A)(1).

Count 15:  Theft, a fifth-degree felony, in violation of R.C. 2913.02(A)(1).

Count 18:  Theft, a fifth-degree felony, in violation of R.C. 2913.02(A)(1).

Count 25:  Theft, a fifth-degree felony, in violation of R.C. 2913.02(A)(1).

Count 28:  Attempted theft, a misdemeanor of the second degree, in violation of R.C. 2903.02/2913.02(A)(1).

Count 30: Receiving stolen property, a fourth-degree felony, in violation of R.C. 2913.51.

{¶ 3} Prior to trial, the State nolled Counts 5 and 6. As a result, Counts 1 and 2 were amended, which reduced the degree of those offenses to second- and third-degree felonies, respectively. Holloway rejected a plea offer, and the case proceeded before a jury.

## II. Trial

{¶ 4} The State's evidence established that from April 2022 until August 2022, Holloway, along with his co-defendants, Jessee Matthews, Deja Granger, and Zionna Lee, engaged in a pattern of corrupt activity by coordinating and orchestrating thefts from numerous Giant Eagle liquor stores in Cuyahoga County and the surrounding counties in Northeast Ohio. The State presented three witnesses, including Matthew Smith, a store detective for Giant Eagle in asset protection, and Agents Andrew Campbell and Raashad Whitfield, with the Ohio Investigation Unit ("OIU"), who were assigned to investigate the liquor thefts. Additionally, the State presented several surveillance videos from Giant Eagle stores that recorded the thefts, still photographs created from those videos, and social media photographs.

{¶ 5} Smith testified that in April 2022, he was a senior store detective for Giant Eagle. He stated that he investigated incidents of internal and external thefts and prepared reports for law enforcement for the prosecution of external thefts, including these large-scale liquor thefts from Giant Eagle stores in Northeast Ohio. He explained that as part of his investigative process in this case, he gathered

evidence from the surveillance systems at each Giant Eagle store and compiled inventories of the missing items, including the total values.

{¶ 6} Smith testified that Giant Eagle in North Ridgeville alerted him that a large amount of liquor was missing from the store. As a result, he reviewed surveillance video from the store and observed two individuals, later identified as Matthews and Holloway, removing several cases of liquor from the store on April 23, 2022. Smith stated that he observed Matthews in the employee-only storeroom placing several cases of liquor in a shopping cart, pushing the cart out of the liquor store area as Holloway spoke with the cashier, and then subsequently passing the cart to Holloway, who exited the store with the cart. According to Smith, the cart contained $1,163.76 worth of liquor — a case of Patron and a case of Hennessy. The jury observed video surveillance and still photographs depicting the conduct of both Matthews and Holloway and reviewed the receipt the store generated corresponding to each item, its price, and total nontax value. Smith stated that neither individual paid for the liquor.

{¶ 7} Smith next testified about another theft that occurred hours later on April 23, 2022, at Giant Eagle in Rocky River. While he testified, the jury observed surveillance footage and still photographs created from the videos, which showed the actions of Matthews, Granger, and Holloway. In one video, Holloway is seen dropping a bottle of liquor on the floor, causing the cashier and another employee to clean up the liquid. According to Smith, he believed this was meant to be a "distraction" while Matthews removed a case of Casamigos tequila from the back

storeroom, placed it on floor, and pushed it toward the exit of the liquor area. The video then showed Holloway picking up the case of liquor, placing it in a shopping cart, and pushing the cart out of the store without paying. The total nontaxed amount was $327.29.

{¶ 8} Smith next testified about a theft from the Giant Eagle store in Mentor on the Lake. He stated that as part of his investigation, he observed surveillance video showing Matthews talking with the cashier while Granger and Holloway removed cases of liquor and other grocery items out of the store without paying. Smith stated that the total amount was valued at $2,207.32. The surveillance video, however, was not presented to the jury, who saw only the still photographs created from the video.

{¶ 9} Smith testified that he investigated thefts from the Willoughby Giant Eagle store that occurred on June 11 and 12, 2022. According to Smith, Holloway was only involved in the theft of liquor on June 11. The jury observed both video surveillance footage and still photographs created from the video that showed Holloway, Granger, and Matthews taking cases of liquor from the back storeroom and pushing carts full of liquor out of the Giant Eagle store without paying. Smith testified that the cases of liquor included Hennessey and Casamigos tequila, and the value was $5,746.86. Regarding the theft that occurred on June 12, 2022, both Granger and Matthews were observed taking $3,429.54 worth of liquor from the Willoughby Giant Eagle store.

{¶ 10} Smith next testified about thefts that occurred at a Giant Eagle store in Parma on July 13 and 15, 2022. Holloway was not involved in the July 13 theft, but surveillance video recorded Matthews and Granger entering the Giant Eagle, leaving with $551.88 worth of stolen liquor, and driving away in a gray Toyota Camry that was later identified as stolen. Smith also testified about Holloway's involvement in the theft that occurred at the same Giant Eagle on July 15, 2022. Video surveillance recorded Matthews, Granger, Holloway, and Lee arriving in the Toyota Camry and entering the Giant Eagle. During this incident, video surveillance recorded Holloway lifting cases of Patron tequila from the storeroom over a low wall and placing them on top of the shelf on the other side. Another video showed Holloway and Matthews taking the cases down from the shelf and placing them in shopping carts that Lee and Granger had positioned. The final video the jury viewed showed Matthews, Granger, Lee, and Holloway pushing liquor-filled shopping carts and some miscellaneous groceries from store. According to Smith, the total nontax value was $3,350.24.

{¶ 11} Smith also testified about an incident that occurred on August 5, 2022. He stated that video surveillance recorded Matthews, Granger, Lee, and Holloway arriving in the Toyota Camry at Giant Eagle in Twinsburg. He stated that they entered the store but exited shortly thereafter, emptyhanded. Smith stated that the Twinsburg Giant Eagle does not have a liquor store.

{¶ 12} OIU Agent Campbell testified that during his investigation, he and Agent Whitfield interviewed Holloway at the Cuyahoga County Jail following his

arrest by the Brooklyn police department. He stated that during this interview, Holloway volunteered detailed information about his involvement in the liquor thefts, admitting to his participation. According to Agent Campbell, Holloway told him that he was compensated with money and pills in exchange for his participation in the thefts.

{¶ 13} OIU Agent Whitfield testified that he also was involved in the investigation of the liquor thefts from Giant Eagle stores in Cuyahoga County. He stated that as part of his investigation, he searched social media accounts linked to Matthews and Granger and found photographs on those accounts revealing their involvement, along with Holloway, in the liquor thefts. In one photograph, Holloway was seated inside the Toyota Camry. In other images, both Matthews and Granger were photographed with liquor bottles matching those taken from Giant Eagle. Additional images were discovered on both Matthews's and Granger's Instagram accounts of liquor bottles and cases of liquor inside the Toyota Camry and its trunk that matched those stolen from Giant Eagle.

### III. The Verdict and Sentence

{¶ 14} Following the State's case, the trial court granted Holloway's Crim.R. 29 motion to dismiss Counts 28 (attempted theft) and 30 (receiving stolen property). The jury found Holloway not guilty of Count 15 (theft) but guilty of the remaining counts. The trial court imposed a total aggregate sentence of four years in prison.

{¶ 15} Holloway now appeals, raising six assignments of error that will be addressed together and out of order where appropriate.[1]

## IV. Identification of Giant Eagle

{¶ 16} In his first assignment of error, Holloway contends that he was denied due process of law by the State's failure to identify "Giant Eagle" in the indictment or at trial as a natural person or a corporation or entity incorporated in the State of Ohio. He contends that the State's failure to identify Giant Eagle or the individual stores as corporations in the indictment and bill of particulars, and its failure to offer proof of the corporate existence of Giant Eagle and the individual stores, rendered the indictment fatally defective and thus deprived the trial court of jurisdiction.

{¶ 17} Holloway did not move to dismiss the indictment as defective pursuant to Crim.R. 12 or move to dismiss the charges on this basis during trial. The "failure to timely object to a defect in an indictment constitutes a waiver of the error." *State v. Horner*, 2010-Ohio-3830, ¶ 46, citing Crim.R. 12(C)(2) (objections to defect in indictment must be raised before trial). Accordingly, we review for plain error, which will only be recognized in exceptional circumstances to avoid a miscarriage of justice. *Id.*, citing *State v. Frazier*, 73 Ohio St.3d 323 (1995); Crim.R. 52(B).

---

[1] Holloway filed his appellate brief, raising five assignments of error. The State filed its brief and Holloway filed a reply brief. Subsequently, this court granted Holloway's request to supplement his brief, instanter, to raise the additional argument of allied offenses. The State did not file a responsive brief.

{¶ 18} The Ohio Supreme Court has recognized two criteria by which the sufficiency of an indictment is to be determined: (1) "'whether the indictment 'contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet,'" and, (2) "'in case any other proceedings are taken against him for a similar offence [sic], whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'" *Frazier* at 332, quoting *Russell v. United States*, 369 U.S. 749, 763-764 (1962).

{¶ 19} Holloway has not alleged that he did not have adequate notice of the charges against him or that he was misled or prejudiced by the State's failure to aver that Giant Eagle or its individual stores were a corporation. Based on our review of the indictment, we find that it tracked the statutory definitions of the offenses charged. Accordingly, Holloway was sufficiently apprised of the charges against him, including that the named victim was Giant Eagle, and was adequately protected against double jeopardy.

{¶ 20} Moreover, Giant Eagle's status as a corporation is not a necessary element of any charge listed in the indictment. An indictment is not made invalid or defective "for want to averment of matter not necessary to be proved" or because of "defects or imperfections which do not tend to prejudice the substantial rights of the defendant upon the merits." R.C. 2941.08(J) and (K).

{¶ 21} Relevant to the appeal, the State charged Holloway with violating R.C. 2923.32, engaging in a pattern of corrupt activity, and R.C. 2923.01, conspiracy —

neither of which require the State to prove the identity of a victim. Regarding the charged theft offenses under R.C. 2913.02, the victim's actual name is not an element of the offense. *See State v. Scott*, 2017-Ohio-9193, ¶ 24 (10th Dist.).

{¶ 22} R.C. 2913.02(A)(1) provides, in relevant part, that "no person, with purpose to deprive the *owner* of property or services, shall knowingly obtain or exert control over either the property or service. . . without the consent of the owner or person authorized to give consent." (Emphasis added.)

{¶ 23} R.C. 2913.01(D) defines an "owner" as "*any person*, other than the actor, who is the owner of, who has possession or control of, or who has any license or interest in property or services, even though the ownership, possession, control, license, or interest is unlawful." (Emphasis added.) Ohio law recognizes a "corporation" as a "person." R.C. 1.59; *Centerville v. Knab*, 2020-Ohio-5219, ¶ 28; *see also* R.C. 2901.01(B)(1)(a)(i) (a "person" under Chapter 29, includes a "corporation").

{¶ 24} The Supreme Court of Ohio has stated that the focus of "ownership" is whether a defendant has lawful ownership at the time of the offense:

> It is apparent from the language of R.C. 2913.01(D) that title ownership in a specific person other than the defendant is not an element of a theft offense. Indeed under this definition a thief can steal from a thief. . . . It is . . . the defendant's relationship to the property which is controlling. The important question is not whether the person from whom the property is stolen was the actual owner, but rather whether the defendant had any lawful right to possession.

*State v. Rhodes*, 2 Ohio St.3d 74, 76 (1982). "'The gist of a theft offense is the wrongful taking by the defendant, not the particular ownership of the property.'" *In*

*re D.J.*, 2024-Ohio-738, ¶ 28 (8th Dist.), quoting *State v. Jones*, 2010-Ohio-902, ¶ 12 (8th Dist.), citing *State v. Thomas*, 2006-Ohio-6588 (8th Dist.). Accordingly, the failure to identify or establish Giant Eagle or its individual stores as a corporation does not render an indictment defective because Giant Eagle is a "person" and thus an "owner" as contemplated under Ohio law.

{¶ 25} Based on the foregoing, Holloway has not demonstrated that the indictment was defective or that he was denied due process. We find no plain error and overrule his first assignment of error.

## V. Sufficiency of the Evidence

{¶ 26} Holloway contends in his second assignment of error that the State presented insufficient evidence to support his convictions for engaging in a pattern of corrupt activity, conspiracy, and theft. Specifically, he contends that the State failed to present sufficient evidence of (1) venue; (2) the store numbers alleged in the indictment and thus failed to meet the elements of each theft offense; (3) that Giant Eagle was a corporation registered to do business in the State of Ohio; and (4) any "enterprise" or conspiracy therewith.

{¶ 27} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Cottingham*, 2020-Ohio-4220, ¶ 32 (8th Dist.). An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Thompkins*, 78

Ohio St.3d 380, 386 (1997) (Cook, J., concurring).  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *Id.*

### A.  Venue

{¶ 28} Holloway's first challenge to the sufficiency of the evidence concerns the State's evidence regarding venue.  Although venue is not a material element of the offense charged, venue is a fact that the State must prove in a criminal prosecution unless it is waived by the defendant.  *State v. Headley*, 6 Ohio St.3d 475, 477 (1983).  A defendant has waived the right to challenge venue when it is raised for the first time on appeal.  *State v. Coley*, 93 Ohio St.3d 253, 258 (2001), citing *State v. Campbell*, 90 Ohio St.3d 320, 336 (2000); *State v. Williams*, 51 Ohio St.2d 112 (1977), paragraph one of the syllabus.

{¶ 29} In this case, Holloway never challenged venue before or during trial and, therefore, he waived his right to complain on this basis.  *Compare State v. Yavorcik*, 2018-Ohio-1824, ¶ 110 (8th Dist.) (defendant challenged venue in a pretrial motion to dismiss and in his Crim.R. 29 motion for judgment of acquittal during trial).  Even if Holloway properly preserved the issue, the State presented sufficient evidence to prove that Cuyahoga County was a proper venue for trial.

{¶ 30} Ohio Constitution, Article I, Section 10, "'fixes venue, or the proper place to try a criminal matter.'"  *State v. Hampton*, 2012-Ohio-5688, ¶ 19, quoting *Headley*, 6 Ohio St.3d at 477 (explaining that the venue provision of the Ohio

Constitution embodies the rule "that the place of trial is to be where the offense occurred.") "Venue need not 'be proven in express terms' as long as it can 'be established by all the facts and circumstances in the case.'" *State v. Brentlinger*, 2017-Ohio-2588, ¶ 57 (3d Dist.), quoting *State v. Dickerson*, 77 Ohio St. 34 (1907), syllabus.

{¶ 31} "Ohio's criminal venue statute, R.C. 2901.12(H), is broad." *Yavorcik*, 2018-Ohio-1824, at ¶ 110 (8th Dist.). This provision reads, in relevant part:

> (H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:
>
> (1) The offenses involved the same victim, or victims of the same type or from the same group.
>
> (2) The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another.
>
> (3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.
>
> (4) The offenses were committed in furtherance of the same conspiracy.
>
> (5) The offenses involved the same or a similar modus operandi.
>
> (6) The offenses were committed along the offender's line of travel in this state, regardless of the offender's point of origin or destination.

R.C. 2901.12. The question of proper venue is ultimately resolved by determining whether the defendant had a "significant nexus" with the jurisdiction in which he was tried. *State v. Carpenter*, 2019-Ohio-58, ¶ 89 (3d Dist.).

{¶ 32} Holloway contends that the State failed to ascertain whether any one offense or element thereof occurred in Cuyahoga County because there was no testimony that "Cuyahoga County" was a location where any offense occurred. (Appellant's brief, page 11.) We disagree and find that the State presented sufficient evidence that the offenses occurred in Cuyahoga County or that Holloway had a significant nexus with Cuyahoga County to allow the State to try the offenses against Holloway in Cuyahoga County.

{¶ 33} During Smith's testimony, the State asked:

> PROSECUTOR: Mr. Smith, these incidents of liquor theft, what's the vicinity, the county that they occurred?
>
> SMITH: So a couple of them occurred in Cuyahoga County; a few occurred in Lake. We had some in Lorain County, like North Ridgeville. We had some farther down in Summit County.

(Tr. 837.) Although an objection was made, which was "denied in part and sustained in part," the record is silent as to what part was sustained and what part was overruled. However, when the prosecutor "restate[d] the question" and asked:

> PROSECUTOR: So, Mr. Smith, you investigated incidents in Cuyahoga County?
>
> SMITH: Yes.
>
> PROSCUTOR: Okay. You investigated incidents in Lake County?
>
> SMITH: Yes.
>
> PROSECUTOR: And you had at least one incident in Lorain County?
>
> SMITH: Yes.
>
> PROSECUTOR: And the incidents we've been discussing here all involved particular individuals?

SMITH: Yes.

(Tr. 834-838.) On cross-examination, defense counsel asked:

DEFENSE COUNSEL: Okay. So you had investigated at least 22 incidents; isn't that right?

SMITH: All total?

DEFENSE COUNSEL: I should be more specific, yes. Of alleged theft of liquor from the State liquor store within Giant Eagles mostly in Cuyahoga County, and a little bit in Lake County and one in Lorain?

SMITH: Yes. I believed I had 27 incidents total attached to it, and not all of them were successful. Not all of them were necessarily brought forward. Yeah, there were 27, total, if I can recall, correctly.

DEFENSE COUNSEL: Okay. And today, you testified about seeing Mr. Holloway during six of those incidents; isn't that right?

SMITH: Yes.

(Tr. 880-881.)

{¶ 34} Subsequently, during Agent Whitfield's testimony, he agreed with the prosecutor's statement that he was "involved in an investigation in Cuyahoga County of the theft of wholesale liquor from Giant Eagle's liquor outlet retail establishments." (Tr. 912.) More importantly, Whitfield testified that after Holloway was arrested by the Brooklyn Police Department, Holloway admitted that he was involved in the thefts. (Tr. 950.)

{¶ 35} Accordingly, viewing the evidence in favor of the State, we find that sufficient evidence was presented to prove that venue was proper in Cuyahoga County because either the theft offenses occurred in Cuyahoga County or Holloway

had a significant nexus with Cuyahoga County in committing these large-scale thefts in Northeast Ohio.

## B. Store Identification

{¶ 36} Holloway next contends that his convictions for theft are based on insufficient evidence because the State did not present any evidence connecting the identity of the specific Giant Eagle stores with any physical locations or amounts stolen.

{¶ 37} Notwithstanding that the State was not required to connect the individual stores to the specific instances of theft to prove that Holloway committed the acts of theft, we could summarily reject this argument because Holloway has failed to support his argument with any legal authority demonstrating error. *See* App.R. 12 and 16.

{¶ 38} Nevertheless, Holloway was convicted of theft in violation of R.C. 2913.02 as charged in Counts 7, 8, 18, 25. A review of the indictment and the bill of particulars on each count demonstrates that Holloway had notice of which count pertained to which store, its location, and date of the offense. Moreover, the State presented sufficient evidence to allow a reasonable factfinder to determine which theft count related to which Giant Eagle store.

{¶ 39} In Count 7, the indictment identified that the date of the offense was April 23, 2022, and occurred at the Giant Eagle Store #199. The State's bill of particulars identified that Giant Eagle Store #199 was located in North Ridgeville on Center Ridge Road (Lorain County). During trial, Smith testified about the theft

that occurred at the North Ridgeville Store. He identified State's exhibit No. 1 as the receipt generated to determine the amount of liquor taken from that store. Smith stated, "So this is a receipt for the theft from the North Ridgeville store on April 23rd totaling retail nontax value of $1,163.76. This is what we determined to have been in the cart that was pushed out by Case Holloway." (Tr. 792.) He subsequently identified Holloway in still photographs generated from surveillance video from the North Ridgeville store.

{¶ 40} In Count 8, the indictment identified that the date of the offense was April 23, 2022, and occurred at the Giant Eagle #1297. The State's bill of particulars identified that Giant Eagle #1297 was located in Rocky River on Center Ridge Road (Cuyahoga County). During trial Smith testified about the theft of liquor that occurred at the Rocky River location on April 23, 2022. He identified State's exhibit No. 18 as the receipt generated to determine the amount of liquor taken from that store, which was $327.19. Smith subsequently identified Holloway, along with Matthews and Granger, in video surveillance evidence and photographs.

{¶ 41} In Count 18, the indictment identified that the date of the offense was June 11, 2022, and occurred at Giant Eagle #6831. The State's bill of particulars identified that Giant Eagle #6831 was located in Willoughby on Euclid Avenue (Lake County). During trial, Smith testified about the theft of liquor that occurred at the Willoughby location on June 11, 2022. He identified State's exhibit No. 57 as the receipts generated to determine the value of liquor taken from that store on both June 11, 2022, and June 12, 2022. Relevant to Holloway, the receipt amount for the

theft on June 11, 2022, totaled $5,746.86. Smith subsequently identified Holloway — along with Matthews and Granger — all exiting the store with a cart of liquor, in video surveillance and photographs.

{¶ 42} In Count 25, the indictment identified that the date of the offense was July 15, 2022, and occurred at Giant Eagle #6388. The State's bill of particulars identified that Giant Eagle #6388 was located in Parma on Broadview Road (Cuyahoga County). During trial, Smith testified about the theft of liquor that occurred at the Parma location on July 15, 2022. He identified State's exhibit No. 72 as the receipt generated to determine the value of liquor taken from that store on July 15, 2022, which totaled $3,350.24. Additional grocery items totaling $26.77 were also taken. Smith identified Holloway, along with Matthews, Granger, and Lee, in video surveillance and photographs. Additionally, he testified that surveillance video recorded the individuals, including Holloway, leaving in a Toyota Camry.

{¶ 43} Based on the foregoing, the State presented sufficient evidence to support Holloway's convictions for theft as charged in Counts 7, 8, 18, and 25. The jury was presented with sufficient evidence allowing it to connect each theft offense to each count by means of the date of the offense and the city in which the offense occurred.

## C. Giant Eagle Corporation

{¶ 44} Holloway next challenges the sufficiency of the evidence of his theft convictions by reincorporating the arguments he raised in his first assignment of error in which he contended that the State failed to identify Giant Eagle as a natural

person or corporation registered to do business in the State of Ohio. We reject this argument for the same reasons as previously explained in addressing his first assignment of error.

### D. Enterprise

{¶ 45} Holloway's final challenge to the sufficiency of the evidence concerns the State's purported failure to present sufficient evidence of an "enterprise" with which he was associated in fact. Specifically, he contends that the State failed to elicit testimony (1) of a "structure" to the alleged "enterprise" that he purposely supported or participated in, and (2) that he conspired to purposely further the enterprise.

{¶ 46} Ohio's Racketeer Influenced and Corrupt Organizations Act ("RICO") was modeled after the federal RICO Act, 18 U.S.C. 1961 et seq. and Ohio courts have applied federal case law in Ohio RICO cases. *State v. Beverly*, 2015-Ohio-219, ¶ 3. R.C. 2923.32(A)(1), engaging in a pattern of corrupt activity, provides, in relevant part that "[n]o person . . . associated with any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity." R.C. 2923.31 defines "pattern of corrupt activity" as "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event."

{¶ 47} Thus, in order to prove a RICO offense, the State must prove that (1) the defendant committed two or more predicate offenses, (2) the defendant was "employed by, or associated with" an "enterprise," and (3) the defendant conducted

or participated in the enterprise "through a pattern of corrupt activity." *State v. Miranda*, 2014-Ohio-451, ¶ 13, citing R.C. 2923.32(A)(1). "'The conduct required to commit a RICO violation is independent of the conduct required to commit [the underlying predicate offenses].'" *Id.*, quoting *State v. Dudas*, 2009-Ohio-1001, ¶ 46 (11th Dist.). "The intent of RICO is 'to criminalize the pattern of criminal activity, not the underlying predicate acts.'" *Id.*, quoting *State v. Thomas*, 2012-Ohio-5577, ¶ 61 (3d Dist.).

{¶ 48} The State's evidence conclusively established that Holloway committed at least two theft offenses by removing liquor from the Giant Eagle stores without paying and thus without consent from the owner. Additionally, the State provided sufficient evidence that Holloway was associated with an "enterprise." R.C. 2923.31(C) defines "enterprise" as including "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity."

{¶ 49} In this case, the enterprise was not a legal entity, but an "association in fact." "An association-in-fact enterprise has been defined as 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Beverly*, 2015-Ohio-219, at ¶ 9, quoting *Turkette*, 452 U.S. 576, 583 (1981); *Boyle v. United States*, 556 U.S. 938, 948 (2009) ("[A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose."). "[M]erely committing successive or related crimes, however, is not sufficient to rise to the level

of a RICO violation." *State v. Schlosser*, 79 Ohio St.3d 329, 333 (1997). Nevertheless, "the existence of an enterprise, sufficient to sustain a conviction for engaging in a pattern of corrupt activity under R.C. 2923.32(A)(1), can be established without proving that the enterprise is a structure separate and distinct from a pattern of corrupt activity." *Beverly* at ¶ 13.

{¶ 50} In this case, the State presented sufficient evidence that Holloway was engaged in an association-in-fact enterprise to support his conviction for engaging in a pattern of corrupt activity and conspiracy. Store detective Smith and Agents Campbell and Whitfield testified that they investigated at least 27 large-scale liquor thefts from Giant Eagle liquor outlet retail establishments in Northeast Ohio that involved Matthews, Granger, Lee, and Holloway, or a combination thereof. Agent Campbell testified that he learned that Holloway and Matthews were distant cousins, Matthews and Granger were romantically involved, and Holloway and Lee were dating. Although Holloway was involved in only six of the investigated thefts, his participation and involvement furthered the enterprise's purpose of taking large amounts of liquor for the purpose of selling it for cash and pills.

{¶ 51} Additionally, Smith characterized the group's methods and operations as "sophisticated," meaning that the participants would distract employees, remove cases of liquor from back storerooms, load shopping carts, pass off the loaded shopping carts to the other participants, and exit the store without paying. Smith stated they used this "technique repeatedly," and that the average shoplifter is not this organized nor would the average shoplifter enter the stock room

to steal cases of liquor. Smith stated that these organized thefts occurred from at least April 2022 until August 2022. Accordingly, we find that the State presented sufficient evidence to support Holloway's convictions for engaging in a pattern of corrupt activity and conspiracy.

{¶ 52} Holloway's second assignment of error is overruled.

## VI. Manifest Weight of the Evidence

{¶ 53} "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . . Weight is not a question of mathematics, but depends on its effect in inducing belief.'" *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12, quoting *Thompkins*, 78 Ohio St.3d at 387. In a manifest-weight analysis, the reviewing court sits as a "thirteenth juror" and reviews "'the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered.'" *Thompkins* at *id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *Thompkins* at 386.

{¶ 54} In his fifth assignment of error, Holloway contends that his convictions for engaging in a pattern of corrupt activity and conspiracy are against the manifest weight of the evidence because he was not a full-time participant, no

evidence was presented that he planned or strategized about the thefts, and his only objective in the enterprise was to get drugs for himself.

{¶ 55} The justification surrounding why Holloway involved himself in the enterprise of stealing large amounts of liquor from Giant Eagle stores in the Northeast Ohio area does not render his convictions against the manifest weight of the evidence. The evidence overwhelmingly demonstrated that Holloway actively participated in the large-scale thefts by distracting store employees, entering employee-only restricted areas, loading cases of liquor into shopping carts, and pushing those carts out of the store beyond all points of sale. On at least one occasion, these events occurred within hours of each other at two different locations. Based on the foregoing, we find that the jury clearly did not lose its way requiring this court to step in as the thirteenth juror, reverse his convictions, and order a new trial. Holloway's fifth assignment of error is overruled.

## VII. Count 3 — Jury Instruction Regarding Venue

{¶ 56} During its charge, the trial court verbally instructed the jury that Count 3, grand theft, occurred in Cuyahoga County. However, because the State charged Holloway with grand theft as an all-encompassing offense of the theft offenses that occurred in Cuyahoga, Summit, Lake, and Lorain Counties over a period of time, the trial court clarified to the jury that the offense was charged as "a continuing course of conduct" and some of the events "may have happened outside of Cuyahoga County." (Tr. 1044.) As a result, the parties agreed that the written

instructions provided to the jury would not include the specific venue of "Cuyahoga County" as it related to Count 3.

{¶ 57} Holloway's third and fourth assignments of error pertain to the trial court's alleged error in removing "Cuyahoga County" from Count 3, grand theft. In his third assignment of error, Holloway contends that the trial court deprived him of his right to due process under the U.S. and Ohio Constitutions when the court removed venue from Count 3. He contends in his fourth assignment of error that his counsel was ineffective by assenting to the trial court's decision to remove the requirement to prove venue under that count. We find no error.

{¶ 58} Because Count 3 was charged as an aggregate of multiple thefts, R.C. 2901.12 did not require the identification of a specific venue. R.C. 2901.12, venue, affords broad jurisdiction when the charged offenses include theft and conspiracy. Regarding theft, subsection (C) provides that when the offense involves the unlawful taking of property, i.e., theft, "the offender may be tried in any jurisdiction from which the property was taken or received." R.C. 2901.12(C).

{¶ 59} Regarding conspiracy, subsection (D) provides that "the offender may be tried in any jurisdiction in which the conspiracy . . . or any of its elements occurred." R.C. 2901.12(D). Subsection (E) further broadens the scope of the trial court's jurisdiction involving conspiracy offenses by stating:

> When the offense is conspiracy . . . the offender may be tried in any jurisdiction in which the offense that was the object of the conspiracy . . . or any element of that offense, was intended to or could have taken place. When the offense is complicity . . . the offender may be tried in any jurisdiction in which the principal offender may be tried.

{¶ 60} Moreover, R.C. 2901.12(G) provides that "[w]hen it appears beyond a reasonable doubt that an offense or any element of an offense was committed in any of two or more jurisdictions, but it cannot reasonably be determined in which jurisdiction the offense or element was committed, the offender may be tried in any of those jurisdictions."

{¶ 61} Finally, to complete the scope of the trial court's grant of jurisdiction over multiple offenses committed "as part of a course of criminal conduct," R.C. 2901.12(H)(1)-(5) permits the State to try an offender in "any jurisdiction in which one of those offenses or any element of one of those offenses occurred." Accordingly, the statutory language of R.C. 2901.12 grants sweeping jurisdiction over charges of engaging in a pattern of corrupt activity, conspiracy, and theft that involved multiple different jurisdictions. *State v. Haddix*, 93 Ohio App.3d 470, 479 (12th Dist. 1994) ("A prosecution for engaging in a pattern of corrupt activity is properly venued in any county in which a portion of the corrupt activity occurred.").

{¶ 62} In this case, the State established that Holloway committed two thefts within Cuyahoga County, to wit: in Parma and Rocky River. *See State v. Love*, 2019-Ohio-3168 (9th Dist.) (venue established when city is located exclusively within one county). The State also established that these thefts occurred in furtherance of an "enterprise" and "pattern," which allowed all the offenses to be tried in Cuyahoga County, where an element of the charged conduct occurred. Because R.C. 2901.12 allows for such broad jurisdiction over the conduct, the inclusion of Cuyahoga County in the jury instruction regarding Count 3 was unnecessary. Accordingly, we

find no error, plain or otherwise, in the trial court's decision to remove "Cuyahoga County" from Count 3 in the written instructions provided to the jury.

{¶ 63} Having found no error in the instructions, we further find no merit to Holloway's fourth assignment of error contending that his counsel was ineffective for assenting to the trial court's decision to delete "Cuyahoga County" from the jury instructions on Count 3. To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he was prejudiced by that performance. *State v. Drummond*, 2006-Ohio-5084, ¶ 205, citing *Strickland v. Washington*, 466 U.S. 668 (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶ 64} Holloway has not demonstrated any defect in trial counsel's representation, nor has he demonstrated that a reasonable probability exists that the result of the trial would have been different had counsel objected to the trial court's clarification and instruction.

{¶ 65} Holloway's third and fourth assignments of error are overruled.

## VIII. Allied Offenses

{¶ 66} In his sixth assignment of error, Holloway contends that the trial court committed plain error in failing to merge the theft offenses in Counts 3, 7, 18,

and 25 because they are allied offenses. The State did not file any opposing argument on this issue.

{¶ 67} Under the plain error standard, an error is not reversible unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. *State v. Rogers*, 2015-Ohio-2459, ¶ 3; *see also* Crim.R. 52. Applying the plain error standard to an allied offenses argument, "an accused has the burden to demonstrate a reasonable probability that the convictions are allied offenses of similar import committed with the same conduct and without a separate animus" or import. *Id.* The defendant must meet this burden before a reviewing court may reverse for plain error. *Id.*

{¶ 68} R.C. 2941.25 provides as follows:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 69} In *State v. Ruff*, 2015-Ohio-995, the Supreme Court of Ohio clarified how courts are to determine whether offenses are allied. The Court noted that the allied-offenses analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. *Id.* at ¶ 26. Nevertheless, conduct is but one factor to consider when determining whether offenses are allied. *Id.* at ¶ 21. The court explained:

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Id.* at ¶ 31.

{¶ 70} With respect to import, the Court explained that offenses are of dissimilar import "if they are not alike in their significance and their resulting harm." *Id.* at ¶ 21. Thus, "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 26.

{¶ 71} The record demonstrates that the State arguably conceded that Count 3, grand theft, was an aggregate count of the underlying theft offenses as charged in Counts 7, 18, and 25. Prior to trial, the State advised the trial court of the plea it offered to Holloway:

The State would move to amend — move to amend Count 1 from a felony of the first degree to a felony of the second degree.

The State would ask for a plea of Count 3, grand theft, a felony of the fourth degree.

The State would then ask for a plea to Counts 7, 15, and 18.

Those are all thefts, felonies of the fifth degree.

Those counts would merge with Count [3], so ultimately there would be sentencing on counts of Count 1 and Count 3.

(Tr. 257-258.)  Subsequently during its initial closing argument during trial, the State told the jury:

> The Court is going to give you an instruction, and it's a special instruction with regard to Count 3.  It's grand theft.
>
> And that count, it's a capture-all, or collect-all count.
>
> It goes from beginning or whenever you identify a course of conduct.
>
> And so in an instance like that, you may add up all of the individual thefts because it's a course of conduct.  It's the same thing, the same way, the same product, and you can add all that together to make it one theft on behalf of the victim because we have one victim, Giant Eagle.
>
> Ultimately, we have stores, but ultimately, really, it's Giant Eagle.

(Tr. 982.)

{¶ 72} In *State v. Snyder*, 2011-Ohio-6346, ¶ 19-20 (12th Dist.), the defendant was convicted of one count of grand theft by deception and three counts of passing bad checks. *Id.* at ¶ 1. In the grand-theft-by-deception count, the defendant was charged with engaging in a continuing course of criminal conduct from January 26, 2009 through March 3, 2009.  *Id.* at ¶ 22.  During that time, the defendant issued three bad checks: one on February 11, 2009 and two on February 18, 2009.  *Id.*  The Twelfth District concluded that the defendant's grand-theft-by-deception and passing-bad-checks convictions were allied offenses of similar import and subject to merger because, in part, the defendant issued the bad checks during the continuing course of conduct alleged in the grand-theft-by-deception count of the indictment.  *Id.* at ¶ 25, 33.

{¶ 73} A similar result is required in this case. Holloway, much like the *Snyder* defendant, committed acts of theft that were the basis for Counts 7, 18, and 25, but as a course of conduct as alleged in Count 3, grand theft. Based on the record, we find that Holloway has demonstrated plain error. Counts 7, 18, or 25 should have merged with Count 3. Accordingly, the findings of guilt on Counts 3, 7, 18, and 25 remain intact; however, the sentences imposed on each are vacated, and the case is remanded for the State to elect upon which count the trial court should impose sentence. The assignment of error is sustained.

## IX. Conclusion

{¶ 74} Judgment affirmed in part, reversed in part, and remanded for resentencing.

It is ordered that the parties share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

MICHAEL JOHN RYAN, J., and
SEAN C. GALLAGHER, J., CONCUR